No. 12455

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DELORES F. SKINNER,

Defendant and Appellant.

---

Appeal from:  District Court of the First Judicial District,
              Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

William Dee Morris argued, Helena, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
J. C. Weingartner, Assistant Attorney General, appeared,
Helena, Montana
Thomas Dowling, County Attorney, Helena, Montana
Leif B. Erickson, Deputy County Attorney, argued, Helena,
Montana

---

Submitted: September 11, 1973

Decided: OCT 25 1973

Filed: OCT 25 1973

Thomas J. Kearney
Clerk

Hon. Robert Boyd, District Judge, sitting in place of Justice Gene B. Daly, delivered the Opinion of the Court.

Defendant Delores F. Skinner appeals from a judgment entered in the district court of the first judicial district, Lewis and Clark County, upon verdicts of guilty on seven of nine counts of uttering and delivering fraudulent checks contained in three separate Informations filed against her on March 1, 1972, June 21, 1972, and August 24, 1972, and from denial of a motion for new trial.

Defendant, Mrs. Skinner, moved from Eugene, Oregon to Helena, Montana on January 18, 1972. Mrs. Skinner was divorced and had custody of the minor children of the marriage. Mrs. Skinner contended that difficulities had arisen with her ex-husband concerning visitation rights with the children, which her ex-husband denied, and she alleged Mr. Skinner had prevailed upon her to return to Montana to simplify the matter of visitation. Mrs. Skinner had requested her ex-husband to advance her the sum of $1,000.00 upon the monthly child support payments to permit her to establish residence in Montana. Some dispute exists as to whether or not Mr. Skinner did in fact agree to make such an advance, but in any event no moneys were forthcoming other than the monthly support payments.

On January 20, 1972 Mrs. Skinner opened a checking account at the Union Bank and Trust Company of Helena and made an initial deposit of $25.00. At that time she was given some temporary coded checks and ordered some checks with a personal imprint. Mrs. Skinner proceeded to write checks on the account commencing on January 25, 1972, which resulted in the first Information being filed. The first check was written to a department store and the second and third were written to a grocery store and merchandise was received by Mrs. Skinner. Mrs. Skinner made no further deposits to the account other than the initial $25.00 deposit and as a result the Union Bank and Trust Company caused the account to be closed and made such a notation on the checks returned thereafter. In addition

to the nine checks which constituted the subject matter of the three Informations, an additional fifty-seven checks were written by Mrs. Skinner during this period and were admitted into evidence as a single exhibit, Plaintiff's Exhibit No. 12, over objections.

Following the return of the nine checks listed in the Informations to the various business firms, each firm individually made efforts to collect the moneys and received various promises of payment. Subsequently, following the filing of the last Information, all of the checks which were the subject matter of the nine counts in the Informations, together with a substantial number of the remaining fifty-seven checks, were paid by Mrs. Skinner through her attorney.

The checks involved in the third Information were all cashed at a drive-in restaurant in the neighborhood where Mrs. Skinner resided. It appeared that these checks were delivered to the drive-in by one of Mrs. Skinner's children and with at least one of the checks a note was delivered to the drive-in asking that the check be held for a few days. The note itself was not in evidence but the existence of such a note was obviously believed by the jury which returned a verdict of not guilty to Count Two of that Information.

Defendant raises seven issues on appeal:

1. Whether restitution constitutes a defense to the charge of uttering fraudulent checks.

2. Whether the five day notice provision contained in section 94-2702, R.C.M. 1947, is an element of the crime.

3. Whether the court erred in allowing evidence of other acts to be admitted.

4. Whether defendant was properly examined under cross-examination.

5. Whether the attorney-client privilege was abused.

6. Whether there was sufficient evidence to support the verdict.

7. Whether the sentence was harsh and oppressive.

Section 94-2702, R.C.M. 1947, under which prosecution was brought, reads:

> "Uttering fraudulent checks or drafts--evidence.
> Any person who for himself or as the agent or
> representative of another or as an officer of a
> corporation, willfully, with intent to defraud
> shall make or draw or utter or deliver, or cause
> to be made, drawn, uttered or delivered, any
> check, draft or order for the payment of money
> upon any bank or depositary, or person, or firm,
> or corporation, knowing at the time of such making,
> drawing, uttering or delivery that the maker or
> drawer has no funds or insufficient funds in or
> credit with such bank or depositary, or person,
> or firm, or corporation, for the payment of such
> check, draft, or order in full upon its presenta-
> tion, although no express representation is made
> with the reference thereto, shall upon conviction
> be punished as follows: If there are no funds in
> or credit with such bank or depositary, or person,
> or firm, or corporation, for the payment of any part of
> such check, draft, or order, upon presentation,
> then in that case the person convicted shall be pun-
> ished by imprisonment in the state prison not exceeding
> five (5) years, or by a fine not exceeding five thousand
> dollars ($5,000.00) or by both such fine and imprison-
> ment; if such check, draft or order be for a sum of
> twenty-five dollars ($25.00) or less, and there are some
> but not sufficient funds in or credit with such bank,
> or depositary, or person, or firm, or corporation, for
> the payment of such check, draft or order in full, then
> in that case the person so convicted shall be punished
> by imprisonment in the county jail not exceeding six
> (6) months, or by a fine not exceeding three hundred
> dollars ($300.00) or by both such fine and imprisonment;
> if such check, draft or order be for a sum greater than
> twenty-five dollars ($25.00) and there are some but not
> sufficient funds in or credit with such bank, or deposi-
> tary, or person, or firm, or corporation, for the pay-
> ment of such check, draft or order in full upon its
> presentation, then in that case the person so convicted
> shall be punished by imprisonment in the state prison not
> exceeding five (5) years, or by a fine not exceeding five
> thousand dollars ($5,000.00) or by both such fine and im-
> prisonment. As against the maker or drawer thereof, the
> making, drawing, uttering or delivering of such check,
> draft or order as aforesaid shall be prima facie evidence
> of intent to defraud and of knowledge of no funds or in-
> sufficient funds, as the case may be, in or credit with
> such bank, or depositary, or person, or firm, or corpora-
> tion, for the payment of such check, draft or order in
> full upon its presentation, provided such maker or drawer
> shall not have paid the drawee thereof the amount due
> thereon, within five (5) days after receiving notice that
> such check, draft or order has not been paid by the drawee.
> The word 'credit' as used herein shall be construed to mean
> an arrangement or understanding with the bank, depositary,
> person, firm or corporation, for the payment of such check,
> draft or order." (Emphasis supplied)

Under Montana statutes the crime of uttering fraudulent checks is one of the crimes of larceny and the statutes effectively deal

with the contention raised by defendant. Section 94-2717, R.C.M. 1947, states in part:

> "* * * The fact that the defendant intended to restore the property taken is no ground of defense if it has not been restored before complaint, to a magistrate or court, charging the commission of the offense, has been made."

From the record it appears that prosecution of the first Information was commenced on March 1, 1972. The initial portion of the restitution made by defendant was not made until June 2, 1972, and no restitution on any of the counts was made until after the Informations had/been filed in the district court.

We note, in passing, that defendant had made promises of payment subsequent to the filing of the charges to various business establishments involved. Defendant contended that this constituted "credit" as defined in section 94-2702, R.C.M. 1947. The term "credit" referred to in that section is credit at the time of making, drawing, uttering or delivering the check. The statute does not refer to later arrangement for credit. In the instant case there is no evidence at all to indicate that defendant had "credit" with any of the payees on any of the checks upon which guilty verdicts were returned. Therefore, we hold that restitution subsequent to the filing of criminal complaint and subsequent promises to pay do not constitute a defense to the crime of uttering and delivering fraudulent checks.

Defendant's principal contention and the one to which the greater portion of the briefs and argument by counsel for Mrs. Skinner is directed is the five day notice provision contained in section 94-2702, R.C.M. 1947, underlined heretofore. Defendant asserts that in the absence of any showing that the five day notice specified in the statute was given, there can be no conviction and the trial court erred in refusing to so instruct the jury.

With this contention we disagree. A most casual reading of the statute indicates these essential elements of the crime of uttering and delivering a fraudulent check: (1) The intent to defraud, and (2) the knowledge of insufficient funds or no funds on deposit.

- 5 -

The legislature recognized that these two elements were difficult to prove and hence a provision in the statute as to the means of proof -- the five day notice provision. Under this provision the State can make a prima facie case of intent to defraud and knowledge of lack of funds by showing that the drawer of the check had been given five days notice that the check had not been honored by the bank and had not made the check good within the five day period. To hold otherwise would be to lend encouragement and give any would-be check writer a five day head start on any possible prosecution. We hold that the underlined portion of the statute constitutes a rule of evidence and is not essential to the establishment of the crime.

The next issue raised concerns fifty-seven NSF checks constituting a single exhibit which was admitted into evidence over strenuous and continued objection on the part of counsel for Mrs. Skinner. It is defendant's contention that the admission into evidence of other crimes so prejudiced defendant that she was deprived of a fair trial. This is a question which has been periodically urged on this Court. Recently in State v. Frates, ____Mont.____, 503 P.2d 47, 29 St.Rep. 960, this Court reviewed the applicable rule and the exceptions thereto. The district court, as well as this Court, is obligated to look very carefully at the relative probative value of the evidence of other offenses, represented by the fifty-seven checks included in Exhibit No. 12, and weigh this against the prejudice inherent in this type of evidence in light of the actual need to introduce such evidence by the State. The checks involved in Exhibit No. 12 were written from the period of January 25, 1972 through June 31, 1972, and during the time when Mrs. Skinner had twice been brought before the district court to be arraigned on the first two Informations. The individual checks contained in the exhibit tend to establish a common scheme, plan or system similar to and closely connected with and not too remote from the ones charged in the Informations, tending to prove the offenses charged.

A similar fact situation existed in State v. Tully, 148 Mont. 166, 418 P.2d 549. The trial court based its decision to admit Exhibit No. 12 into evidence upon the authority of Tully and correctly so.

Defendant's next issue on appeal contends she was prejudiced during the course of cross-examination by the State, attempting to further identify the checks contained in Exhibit No. 12, by requiring defendant on cross-examination to either continually seek refuge in the Fifth Amendment or run the risk of self-incrimination. However, having voluntarily assumed to testify in her own defense and the evidence having been properly admitted, the State on cross-examination asked and Mrs. Skinner answered:

"Q. The checks that have been placed in State's Exhibit 12, did you write all of these checks?

"A. Yes, I did.

"Q. Every single one that is in there?

"A. I assume so.

"Q. Will you look at them?"

At this point counsel for defendant requested leave to enter an objection outside the presence of the jury. Thereafter, in chambers, counsel objected on the grounds that to require defendant to testify concerning the individual checks contained in Exhibit No. 12 would violate her right against self-incrimination. Whereupon the court sustained the objection and the State abandoned any further inquiry concerning Plaintiff's Exhibit No. 12. We fail to see where defendant was subjected to any prejudice after having answered, without objection, that she had written all of the checks.

During the course of cross-examination these questions were asked:

"Q. You stated in response to a question by your counsel that as far as you knew, all of the checks that you had written have been paid off, is that correct?

"A. To the best of my knowledge.

"Q. Does that include checks that were contained
in Exhibit No. 12?"

To the latter question defendant's counsel interposed an objection based upon the ground of attorney-client privilege. It does not appear to the Court that the question posed in any way related to the attorney-client privilege and the objection was correctly overruled.

A careful review of the entire record on appeal reveals that there was ample evidence, including the testimony of defendant herself as to the commission of the offenses alleged, to sustain the verdicts.

Defendant urges one further issue on appeal which has to do with the sentence pronounced. Defendant was found guilty of seven counts of uttering and delivering fraudulent checks. In its judgment the court ordered that she be imprisoned in the state prison for the term of two years on each of the seven counts with one year of each of said sentences suspended, the sentences to run consecutively. Under the statute defendant could have been sentenced up to five years on each count plus a fine. In State v. Karathanos, 158 Mont. 461, 468, 493 P.2d 326, this Court said:

"It is the general rule that a sentence within
the maximum authorized by statute is not cruel
and unusual punishment."

Finding no merit in any of defendant's contentions, the judgment and sentence of the district court is affirmed.

_____
Hon. Robert Boyd, District Judge,
sitting for Mr. Justice Daly.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 8 -