STATE OF MONTANA, Plaintiff and Respondent, v. DAVID
LEROY JUST, Defendant and Appellant.

No. 14197.
Submitted June 5, 1979.
Decided Sept. 17, 1979.
Dissenting Opinion Oct. 22, 1979.
602 P.2d 957.

Stacey & Nye, Billings, Calvin J. Stacey, argued, Billings, for defendant and appellant.

Mike Greely, Atty. Gen., Helena, Mary B. Troland, argued, Asst. Atty. Gen., Helena, Harold F. Hanser, County Atty., Billings, for respondent.

W. W. LESSLEY, District Judge, sitting in place of Mr. Justice Sheehy, delivered the opinion of the Court.

Defendant appeals from his conviction of the crime of sexual intercourse without consent following a jury trial in the District Court of Yellowstone County.

Defendant is the stepfather of the victim, who was thirteen years old at the time of the incident. The specific incident with which defendant was charged occurred on or about January 27, 1977. At trial the victim testified to the following sequence of events.

On January 25, or 26, the victim had been left in charge of the family home in Huntley, Montana, and of her younger brother and sister while her mother attended a conference in California, and defendant, her stepfather, was working out of the state.

On the night of the specific acts charged, the victim and her brother and sister had gone to bed for the night. Sometime between 9 and 10 p m., defendant arrived home, awakened the victim, and asked her to cook something to eat for him. The victim, wearing an ankle length nightgown, complied.

Sometime later, after defendant had finished eating and the victim had returned to bed, defendant began calling to the victim, asking her to get up and come sit beside him on the couch in the living room. The victim again got out of bed and returned to the kitchen where she cleared away the dirty dishes. While she was so engaged, defendant went back to his bedroom and began looking for something. He then called the victim back to his room to look at something.

The victim went back to the doorway of defendant's bedroom. He asked her to sit beside him on the bed, which she refused to do. Shortly thereafter, he grabbed her by her wrist and pulled her

down on the bed beside him. After laying there awhile, defendant got up, procured a pornographic magazine from his desk drawer and attempted to force the victim to look at it.

Defendant then shut the bedroom door, turned out the lights, removed his pants, pushed the victim's nightgown to her waist, removed her underpants, and attempted unsuccessfully to have genital sexual intercourse. After some period of time, defendant, failing to achieve sexual penetration, grabbed the victim by the back of the neck and forced her to take his penis into her mouth. He held her in this position until he ejaculated.

The victim was then allowed to go to the bathroom where she cleaned up and, after turning off the television, she returned to her own bed. Because there was nothing on the television, the victim estimated the time as being at least after midnight.

At school the next day, the victim called her aunt in Billings to come pick her up. The aunt, upon arriving at the school, was generally informed by two of the victim's schoolmates that she had been sexually assaulted by her stepfather. Thinking that they meant the victim had been raped, the aunt, after calling the victim's mother in California, took her for a pelvic examination which revealed no sign of semen, trauma, or penetration. The examining physician did not, however, examine the victim's mouth.

The next day, the victim's mother returned to Billings and along with the victim went to the Yellowstone County sheriff's department to report the incident. With the mother's consent, a search warrant was obtained and executed for the seizure of the bedspread from defendant's bed, the victim's nightgown, some towels and the pornographic magazine.

Shortly after the execution of the search warrant, defendant was arrested and taken to the Yellowstone County jail where several pubic hairs and his undershorts were taken. The bedspread, nightgown, towels and undershorts were sent to the FBI laboratory in Washington, D.C., for testing along with samples of pubic hair from both defendant and the victim.

At trial the victim further testified, over the continuing objection

of defense counsel, that defendant had previously committed sexual offenses against her similar to the offense with which he was charged. The victim testified that these acts had begun three years earlier while the family lived in Wisconsin and all occurred when she and defendant were alone. In total, the victim testified that she had been forced to have oral sex with defendant between ten and thirty times prior to the January 27 incident. None of the victim's testimony as to these prior acts were corroborated by other testimony or evidence.

The State presented further testimony from the FBI agents who conducted the examination of the physical evidence. These agents testified that a spermatozoa stain was discovered on the bedspread and on the defendant's undershorts, but they were unable to identify these stains in any more detail. No stains were found on either the nightgown or the towels. As it developed at trial, however, it appears that the wrong nightgown had been seized and the one the victim had been wearing at the time of the incident was inadvertently washed before the error was discovered.

The physician who examined the victim after the incident testified as to the absence of any evidence of semen, trauma, or penetration in the pelvic area. He conceded that he had not examined her mouth.

Defendant testified in his own behalf, denying any and all of the sexual assaults alleged by the victim. Further, the defense attempted to impeach the victim's testimony regarding prior assaults by bringing out that although she had had numerous opportunities to do so, she had never reported any of the prior incidents to anyone.

The issues before us are:

1. Whether the District Court erred in allowing the victim to testify over defendant's objection to uncharged, uncorroborated prior acts of sexual crimes allegedly committed upon her by the defendant?

2. Whether the District Court erred in refusing defendant's of-

fered cautionary instruction on use of the prosecuting witness's testimony?

3. Whether the evidence produced at trial can sustain the verdict as a matter of law?

■ Defendant in his argument below and before this Court recognizes the exception to the general rule of the incompetency of evidence of the commission of other crimes for which a defendant is not charged. That exception, which is the rule in this jurisdiction, is of ancient lineage. Simply put, the evidence of prior sexual acts by a defendant and a prosecutrix is admissible in a trial for a sexual offense.

In this first issue of his appeal, defendant challenges as "illogical" one of the oldest and most often applied general rules and exception, in this Satte's criminal jurisprudence. This general rule as well as the exception were recently summarized in *State v. LaVe* (1977), 174 Mont. 401, 571 P.2d 97, 100:

"Generally, evidence of other offenses or of other similar acts at other times is inadmissible for the purpose of showing the commission of the particular criminal offense charged. *State v. Taylor*, 163 Mont. 106, 120, 515 P.2d 695 (1973). The reason is that the defendant is entitled to be informed of the offense charge so that he need prepare his defense only to that particular offense. Proof of other offenses subjects him to surprise and to a defense of multiple collateral or unrelated issues. *State v. Jensen*, 153 Mont. 233, 455 P.2d 631 (1969). This rule applies to evidence of other offenses regardless of whether defendant was actually charged with the other offense. See, *State v. Tiedemann*, 139 Mont. 237, 362 P.2d 529 (1961).

"The general rule, however, is subject to several exceptions when such evidence becomes admissible: (1) When similar acts with the same prosecuting witness are involved; (2) when similar acts are not too remote in time; and (3) when evidence of other offenses tends to establish a common scheme, plan or system, where such other offenses are similar to, closely connected with and not too remote from the one charged, and where they are so that the proof

of one tends to establish the other. *State v. Taylor*, supra; *State v. Jensen*, supra."

Accord, *State v. Heine* (1975), 169 Mont. 25, 27-28, 544 P.2d 1212, 1213; *State v. Taylor* (1973), 163 Mont. 106, 120-22, 515 P.2d 695, 703-04; *State v. Frates* (1972), 160 Mont. 431, 436-37, 503 P.2d 47, 50; *State v. Jensen* (1969), 153 Mont. 233, 238-39, 455 P.2d 631, 633-34; *State v. Merritt* (1960), 138 Mont. 546, 548-50, 357 P.2d 683, 684; *State v. Sauter* (1951), 125 Mont. 109, 111-16, 232 P.2d 731, 731-34; *State v. Gaimos* (1916), 53 Mont. 118, 124, 162 P. 596, 599; *State v. Peres* (1903), 27 Mont. 358, 360, 71 P. 162, 163.

■ The above rules and exception have also recently been coddified in Rule 404(b), Mont.R.Evid.:

(b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

As noted in the Commission Comment to this section, the Commission intended "that there be no change in the admissibility of such evidence under existing Montana law."

■ Montana has given protection to the defendant in such a case as this against the admission of potentially prejudicial evidence of other crimes or wrongful acts. It is the rule that both trial courts and this Court are obligated to balance carefully the relative probative value of the evidence of other offenses against the prejudice inherent in this type of evidence in light of the actual need to introduce such evidence. *State v. Skinner* (1973), 163 Mont. 58, 64, 515 P.2d 81, 84; *State v. Frates*, 160 Mont. at 437, 503 P.2d at 50.

Rule 403, Mont.R.Evid., requires the exclusion of otherwise relevant evidence ". . . if its probative value is substantially outweighed by the danger of unfair prejudice . . ."

There emerges a four element test to determine the admissibility

of evidence of other crimes or acts criminal prosecutions such as the one here. The first three of these elements were identified in *State v. Jensen*, 153 Mont. at 239, 455 P.2d at 634; the fourth is based on Rule 403, Mont.R.Evid. The four factors are:

1. The similarity of crimes or acts;

2. nearness in time; *and*

3. tendency to establish a common scheme, plan or system; *and*

4. the probative value of the evidence is not substantially outweighed by the prejudice to the defendant.

Applying this test to the facts of the instant appeal, we conclude that the evidence of defendant's other acts against the victim was properly admitted. First, all of the prior acts were sexual in nature, in almost all instances involving exactly the type of sexual contact charged against defendant, and always involving the same victim.

The prior sexual acts testified by the prosecutrix have a similarity of inherent probability. In Wisconsin, defendant arranged to be at home when the prosecutrix returned from school and no one else was there; in Hays, defendant stayed home while his wife was gone. There is the hand of a plan with an ulterior motive carrying out an intent by scheme and design of the defendant that was a resultant common course of conduct.

Second, the earliest act testified to by the victim occurred three years before the act resulting in the criminal charges. The remaining acts apparently occurred on a "regular" basis as opportunity afforded until the January 27, 1977, incident. While the act of three years before is close to the limit as being too remote for probative value, see *State v. Nicks* (1958), 134 Mont. 341, 343, 332 P.2d 904 905, when placed in the total sequence of events, it clearly forms an integral part. In any event, we have specifically held admissible testimony of similar acts occurring over a three-year period of time. *State v. Heine*, 169 Mont. at 28, 544 P.2d at 1214; *State v. Jensen*, 153 Mont. at 239, 455 P.2d at 634.

Third, all of the acts testified to occurred between the defendant and the victim; all transpired when the two were alone; and all in-

volved essentially identical behavior on the part of the defendant. As stated in *Jensen:*

"In this case the other acts proved show a continuous pattern of behavior on the part of the defendant for a period of over 3 years. The pattern during that period remained virtually the same. This is precisely what is meant by common scheme, plan or system." 153 Mont. at 239, 455 P.2d at 634.

The facts of the instant appeal likewise illustrate a common scheme, plan or system.

The fourth factor is perhaps the most difficult to apply. Evidence of other acts, especially of the nature testified to in this case, invariably will result in prejudice to the defendant to a certain degree. Nevertheless, when the victim will testify to such a concerted and continuous course of offensive conduct as apparently transpired between the defendant and victim here, and will thereafter be subject to cross-examination on that testimony, we cannot say as a matter of law that the probative value of the evidence was *substantially* outweighed by the prejudice to defendant.

Defendant does not challenge the applicability of this exception, but insists that in the instant case the prior uncharged offenses are uncorroborated testimony of the prosecutrix.

Defendant relies on *People v. Stanley* (1967), 67 Cal.2d 812, 63 Cal.Rptr. 825, 433 P.2d 913. That case is clearly distinguishable.

In *Stanley*, the California Court held the only purpose of the testimony of previously charged sex offenses was to corroborate the prosecuting witness's testimony. The Court held under the facts of that case the testimony was insufficient to so corroborate.

■ *Stanley* is further distinguishable from the case before us on appeal. The victim here was not shown to have a bad reputation for veracity, nor was she contradicted on any material point in her testimony. More important, the evidence of defendant's prior acts was not introduced to corroborate the victim's testimony as to the charged offense; in sex offense cases in Montana, the victim's testimony does not need to be corroborated. *State v. Metcalf*

(1969), 153 Mont. 369, 378, 457 P.2d 453, 458; *State v. Gaimos*, 53 Mont. at 126, 162 P. at 599.

Further, the purpose of the evidence under attack on this appeal was offered to show "plan, motive, scheme, design, a common course of conduct . . . ." This purpose was stated during the trial by the county attorney:

"We would offer this testimony as an exclusion from the hearsay rule in that it goes to plan, motive, scheme, design, a common course of conduct, a single transaction involving a series of incidents with the same Defendant and the same victim who was always available to him."

Even *Stanley*, upon which appellant relies, recognizes this use:

"There are, of course, certain situations in which evidence of other crimes is admissible. In cases involving sex crimes, it has been held that evidence of other not too remote sex offenses with the prosecuting witness is admissible to show a lewd disposition or the intent of defendant towards the prosecuting witness. (*People v. Sylvia*, 54 Cal.2d 115, 119-120, 4 Cal.Rptr. 509, 351 P.2d 781; see *People v. Kelley*, 66 Cal.2d 232, 234, 57 Cal.Rptr. 363, 424 P.2d 947).

"Defendant does not dispute the latter rule as a general proposition . . ." 63 Cal.Rptr. at 827-828, 433 P.2d at 915-16.

The admission of this testimony was not error. Defendant's first issue is then without merit.

■ We are concerned, nevertheless, with the possibility that the exceptions we have discussed thus far may "swallow up" the general rule; that is, that by asserting that the purpose of the testimony is to establish a common scheme of recent similar behavior, the State may be able to circumvent the general rule altogether, resulting in, perhaps, prejudice difficult to measure to the defendant. As we have stated:

"The general rule should be strictly enforced in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions

which clearly justify such a departure. The exceptions should be carefully limited, and their number and scope not increased." *State v. Tiedemann* (1961), 139 Mont. 237, 242-43, 362 P.2d 529, 531.

Accord, *State v. Sauter*, 125 Mont. at 116, 232 P.2d at 734.

It was perhaps such a similar concern which motivated the Minnesota Supreme Court to adopt the following procedures in the admission of evidence of other crimes:

"2. As an additional safeguard in the trial of future cases, but without retroactive application in so far as the rules are new, the following procedures shall be followed:

"(a) Evidence of other crimes may not be received unless there has been notice as required by *State v. Spreigl*, 272 Minn. 488, 496, 139 N.W.2d 167, 173. (Applicable to all cases tried after December 17, 1965).

'(b) At the time the evidence is offered, the prosecutor shall specify the exception to the general exclusionary rule under which it is admissible.

"(c) If the evidence of other crimes is received for purposes of identity rather than to show a common scheme or plan, there must nevertheless be some relationship in time, location, or modus operandi between the crime charged and the other offenses.

"(d) Evidence of other crimes is admissible only if the trial court finds the direct or circumstantial evidence of defendant's identity is otherwise weak or inadequate, and that it is necessary to support the state's burden of proof. It should be excluded where it is merely cumulative and a subterfuge for impugning defendant's character or for indicating to the jury that he is a proper candidate for punishment.

"(e) The evidence of defendant's participation in other crimes need not be proved beyond a reasonable doubt but must be clear and convincing.

"(f) Both at the time the evidence is received and in the final charge, the court should admonish the jury that the testimony is received for the limited purpose of establishing identity. It is the

court's duty to advise the jury in unequivocal language that defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment." *State v. Billstrom* (1967), 276 Minn. 174, 149 N.W.2d 281, 284-85.

Many of these procedural steps have either direct or analogous support in Montana's cases or statutes. Steps (c) and (d) are broadly included in the general rule and exceptions we have discussed above. Step (e) is logically derived from general principles of law. The evidence of the other acts is not for purposes of proving other crimes; defendant will not be penalized for the other offenses unless they are specifically charged and proved. Therefore, the burden of proof as to the acts need not rise to the level required in a criminal prosecution for those acts.

As to step (a), we discussed the question of notice to the defendant that evidence of prior acts may be used against him in *State v. Nicks*, 134 Mont. at 343-44, 332 P.2d at 905:

"The reason for excluding such evidence is of course fundamental. The defendant should be informed by the information of the particular crime with which he is charged. He looks to the information to ascertain the charge that he must be prepared to meet. If he may be subjected to evidence of his conduct many years before the time named in the information he will be taken by surprise and the 'issues would be multiplied indefinitely, without previous notice to the defendant, and greatly to the distraction of the jury.' *Quen Guey v. State*, 20 Ariz. 363, 181 P. 175, 177."

See also, *State v. Jensen*, 153 Mont. at 238, 455 P.2d at 633-34.

Analogously, the State is required by statute to specifically inform a defendant of its intent to present evidence of prior felony convictions in seeking increased penalties under the persistent felony offenders statute. Section 46-18-503 MCA. A defendant who may have to refute evidence of past acts or offenses, not specifically charged, should be accorded the same notice. Included in such notice should be a statement of the exception under which this

evidence is sought to be admitted as required by step (b) of the Minnesota procedures.

As to step (f), the duty of the trial court to specifically instruct the jury as to the purposes for which the evidence of other offenses has been received has been mentioned in several of our cases. E. g., *State v. Heine,,* 169 Mont. at 28, 544 P.2d at 1214; *State v. Harris* (1915), 51 Mont. 496, 499, 502, 154 P. 198, 199, 200; *State v. Vinn* (1914), 50 Mont. 27, 37, 144 P. 773, 776-77.

We feel these procedures should be standardized in cases of this type and therefore hold that the following procedures shall be followed without retroactive application insofar as they are new:

(a) Evidence of other crimes may not be received unless there has been notice to the defendant that such evidence is to be introduced. The procedures set forth in section 46-18-503 MCA should serve as guidelines for the form and content of such notice. Additionally, the notice to the defendant shall include a statement as to the purposes for which such evidence is to be admitted.

(b) At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes.

(c) In its final charge, the court should instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment.

The foregoing procedures are not intended to change any of the other rules governing the admission of this evidence discussed earlier.

We consider the next claimed error, the refusal of defendant's proposed cautionary instruction. The fundamental question presented is the credibility of witnesses. The proposed cautionary instruction reads as follows:

"You are instructed that charges such as the one made against

the defendant in this case are easy to make and hard to defend against even by one who is guiltless; and where the State relies upon the uncorroborated testimony of the prosecutrix, you, the jury, should be cautioned of convicting upon such evidence. The reason is that from motives as various as human perversity, the charge may be made when no offense at all had been done, or it may be made against an innocent person when the crime has, in fact, been committed."

Instructions similar to the one above were offered in the earlier cases of *State v. Keeler* (1916), 52 Mont. 205, 211, 156 P. 1080, 1081, and *State v. Mihalovich* (1924), 69 Mont. 579, 585, 222 P. 695, 697. In each of those cases, this Court held that the trial judge's refusal to give the instruction was proper when there was nothing in the record to suggest that the prosecutrix was motivated by private malice or a desire for revenge. See *State v. Boe* (1963), 143 Mont. 141, 148-49, 388 P.2d 372, 376. The test for determining the propriety of giving an instruction such as that offered by defendant was set forth in the recent case of *State v. Ballew* (1975), 166 Mont. 270, 276, 532 P.2d 407, 411:

". . . it is clear that refusal[s] to give such an instruction will be error only when some specific cause is shown for distrusting the testimony of the complaining witness. Such causes might include manifest malice, desire for revenge, or an absence of corroborating evidence tending to support the facts testified to by the complaining witness."

Defendant points out nothing in the record which would indicate any malice or desire for revenge as a motivation for the testimony of the prosecuting witness. Furthermore, although there is no legal requirement that the testimony of the prosecutrix be corroborated, *State v. Metcalf* (1969), 153 Mont. 369, 378, 457 P.2d 453, 458, corroborative evidence was in fact presented during trial. As stated earlier, the pornographic book which the prosecutrix testified had been shown to her by defendant was recovered during the search of defendant's home and introduced into evidence. Sperm and defendant's pubic hair were found on the bedspread on which the offense occurred.

This Court has indicated in earlier cases that the propriety of giving an instruction such as that offered by defendant is doubtful in any case. See *State v. Peterson* (1936), 102 Mont. 495, 502, 59 P.2d 61, 64; *State v. Mihalovich*, 69 Mont. at 585, 222 P. at 697. The refusal to give such an instruction constitutes error, if at all, only in the limited circumstances set forth in *Ballew*. Because none of those circumstances existed in this case, the trial court did not err in refusing to caution the jury as to the use of the·testimony of the prosecuting witness.

There was sufficient instruction to properly guide the jury in the field of credibility of witnesses. Court's Instruction No. 2 provided:

"Every witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testified, by the character of his testimony, or by evidence affecting his reputation for truth, honesty integrity, or his motives or by contradictory evidence."

*People v. Rincon-Pineda* (1975), 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247, speaks against the use of such cautionary instruction in these words:

"As we observed, Sir Matthew Hale himself was convinced that the best test of the credibility of a prosecutrix was the surrounding circumstances, including any corroborating evidence, of a particular case. Moreover, Hale affirmed the 'excellency' of leaving the question of credibility to the jury." 123 Cal.Rptr. at 128, 538 P.2d at 256.

The Court conclusively speaks against the use in these words:

"We now turn to the question whether the instruction may be given discretionarily by a trial court. Having already noted the fundamental differences in the position of the defendant before the bar of modern American justice as opposed to the English prisoner's dock of 300 years ago, and having dispensed with the notion that those accused of sex offenses suffer any special prejudice today, we think the instruction as it has customarily been worded (i. e., CALJIC No. 10.22) is inappropriate in any context, and the further use of such language is hereby disapproved. (Accord, *State*

*v. Feddersen* (Iowa 1975) 230 N.W.2d 510, 514.)" 123 Cal.Rptr. at 132, 538 P.2d at 260.

The Court acted properly in refusing the cautionary instruction.

■ In considering defendant's final issue we find that the court was correct in denying defendant's motions to dismiss. Section 46-16-403 MCA provides:

"When, at the close of the state's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant."

In *State v. Yoss* (1965), 146 Mont. 508, 514, 409 P.2d 452, 455, this Court stated that a directed verdict of acquittal is appropriate in criminal cases "only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict." Accord, *State v. Thompson* (1978), 176 Mont. 150, 576 P.2d 1105, 1108. The decision whether to dismiss the charge or direct a verdict of acquittal lies within the sound discretion of the trial court and will be disturbed on appeal only when abuse is shown. *State v. Buckley* (1976), 171 Mont. 238, 243, 557 P.2d 283, 285-86.

In Montana, convictions for sexual intercourse without consent may be based on the uncorroborated testimony of the prosecuting witness. *State v. Metcalf* (1969), 153 Mont. 369, 378, 457 P.2d 453, 458. See, *State v. Paddock* (1930), 86 Mont. 569, 575, 284 P. 549, 551. In *State v. Gaimos* (1916), 53 Mont. 118, 126, 162 P. 596, 599, this Court stated:

"Only in those rare cases where the story told is so inherently improbable or is so nullified by material self-contradictions that no fair-minded person could believe it may we say that no firm foundation exists for the verdict based upon it."

Contrary to defendant's assertion in this case, it is not "inherently improbable" that the other small children in the family of the prosecutrix, who were eight and nine years old, should sleep through the incident as described by the prosecutrix. Because the testimony was not materially self-contradictory or improbable, it

provided a sufficient basis as a matter of law for a verdict of guilty.

Under such circumstances, the trial judge properly denied defendant's motion to dismiss, leaving the weighing of testimony and the assessment of the credibility of the witnesses to the jury. *State v. Buckley*, 171 Mont. at 243, 557 P.2d at 286.

We find no error. The judgment of conviction is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and HARRISON concur.

MR. JUSTICE SHEA dissents.

MR. JUSTICE SHEA dissenting:

Under the facts of this case, I would hold evidence of similar offenses inadmissible, and accordingly, I would reverse defendant's conviction and grant him a new trial.

The majority opinion has raised more questions than it has given answers, and there are many areas with which I do not agree with the result or the analysis. Initially, however, I shall focus on the fundamental unfairness of failing to apply the rules to defendant's case. Without a discussion of the facts and analysis of why defendant was not prejudiced in this case, I fail to see how the majority could reach its decision affirming the conviction in this case.

First, by adopting a required notice rule, the majority recognizes that a defendant cannot be expected to defend against charges of this nature unless he has adequate advance notice of the similar offenses which the state plans to use against him at trial. Here, the majority did not discuss the facts of the case to determine if defendant did have the required notice, or at least notice that was sufficient under the facts of his case. Simply stated, if defendant had the required notice, he was not entitled to a reversal on this ground; if he did not he was entitled to a reversal. He did not have the required notice.

Second, assuming the proper admission of previous similar offenses committed upon the prosecutrix, did the trial court give the required cautionary instruction to the jury at the time the evidence

was received, and did the District Court give the required cautionary instruction to the jury when the jury received its final instructions on the law. If a cautionary instruction was omitted at the time the evidence was admitted, conceivably the state could argue that the error was not that serious *if* the jury was given a cautionary instruction as to the use and limitations of such evidence when it was finally instructed on the law of the case. But here there was no cautionary instruction at all. I fail to see how this case can be affirmed because of this fundamental failure; and yet the majority has ignored the issue of whether these instructions were actually given in this case.

Third, the majority has ignored one of the fundamental rules concerning the admissibility of evidence of similar crimes other than the one charged—the state must first demonstrate a need for such evidence. If the state cannot overcome this threshold requirement, the trial court should automatically deny such admission in the state's case-in-chief. There would be no reason to enter into the balancing test which the majority has indicated the trial court should follow in determining whether or not to admit the testimony.

The conviction in this case can be affirmed only by doing precisely what the majority has done in this case—it has ignored the very law which has been set forth in the opinion.

*NOTICE TO DEFENDANT OF PREVIOUS SIMILAR OFFENSES:*

I begin with the question of notice to defendant as to the state's intended use of previous similar offenses. This Court has set forth stringent requirements which the state must follow in informing a defendant in advance of trial that the state plans to introduce evidence that he committed similar crimes. By doing so, the majority has determined, and rightly so, that it is fundamentally unfair to compel a defendant to face evidence of other similar crimes other than the one charged unless he has been given adequate notice of the time, place and circumstances of the previous crimes, and the legal basis upon which the state will seek its admission into evidence. I assume that the majority means that if the required

notice is not given, the evidence cannot be used, at least not in the state's case-in-chief. And, if the evidence is used in violation of the notice requirements, the case must be reversed. Any other conclusion would render the majority rule meaningless, exalting form over substance. But in not determining whether defendant had this required notice, or what kind of notice he did have, how can it be concluded that defendant was not prejudiced in this case? Unless this conclusion can be reached by an analysis of the facts and proper application of the rule announced by the majority, there is no way the decision can be affirmed consistent with the integrity of the judicial process.

The prejudice to defendant is manifest in this case, even if the state had given him the required notice. How, possibly could a defendant begin to prepare a defense to testimony which has been characterized by the majority as follows:

"At trial the victim further testified over the continuing objection of defense counsel, that defendant had previously committed sexual offenses against her similar to the offense with which he was charged. *The victim testified that these acts had begun three years earlier while the family lived in Wisconsin and all occurred when she and defendant were alone. In total, the victim testified that she had been forced to have oral sex with defendant between ten and thirty times prior to the January 27 incident.* None of the victim's testimony as to these prior acts were corroborated by other testimony or evidence." (Emphasis added.)

It is virtually impossible to defend against such broad, uncharted accusations in any event; and without the required notice it is impossible. Without any corroboration whatsoever of these alleged previous incidents, the jury is told that defendant committed similar acts upon the prosecutrix a total of from ten to thirty times. I cannot conceive of anything more prejudicial to the rights of a defendant to have a fair trial. Since the majority did not bother to address itself to this issue, I haven't the faintest idea of why defendant was not entitled to the benefit of the notice requirement adopted in the majority opinion. I can only conclude that there are

reasons not expressed in the majority opinion, why the defendant's rights *in this case*, were ignored.

I note, moreover, that the record is barren of any evidence that would even begin to comport with the notice requirements set forth in the majority opinion. As far as the record is concerned, defendant first faced the news of what the state wanted to do at the time that the prosecutor made his opening statement to the jury. This can hardly be classified as fundamental fairness. This error, moreover, was compounded by the failure of the trial court to adequately assess the state's need for such evidence.

## THE STATE DID NOT DEMONSTRATE A NEED FOR THE EVIDENCE:

I turn next to what I believe is the threshold requirement that the state must meet before the trial court engages in any balancing test as to whether or not to admit the evidence. The state must clearly demonstrate a need for the evidence of similar crimes before such can be admitted in the state's case-in-chief. Assuming adequate notice, it was the duty of the trial court to determine whether the state needed the evidence to prove its case-in-chief. If no need was demonstrated, the trial court's inquiry should have ended right there. If, on the other hand, the state demonstrated a real need for the evidence to prove its case-in-chief, then, of course, the trial court should have engaged in the balancing test of weighing the probative value against the inherent prejudice of such testimony.

One cannot tell from the record what factors the trial court considered in admitting the evidence. Without any explanation, the trial court simply ruled the evidence to be admissible. Indeed, the record is devoid of any argument that the state needed the evidence to prove its case-in-chief. As to the crime charged, as the majority noted, it did not require corroboration. If the jury chose to believe the testimony of the prosecutrix, and if her testimony was not inherently improbable, there was sufficient evidence to convict. But as the majority also noted, the prosecutrix' testimony was corroborated in this case by the pubic hairs and sperm stains found on the bedspread where the alleged activity took place, and by the

pornographic magazine found in the desk drawer, which defendant had shown to the prosecutrix. This evidence lent credence to the prosecutrix' testimony and would tend to support her version of what happened. But precisely because her story was corroborated, the state did not and could not demonstrate any need to have her testify to similar crimes committed upon her by the defendant on previous occasions. To do so under these circumstances was clearly prejudicial error.

## THE FAILURE TO GIVE CAUTIONARY INSTRUCTIONS:

The prejudicial error already in the record by virtue of inadequate notice to defendant, and by the admission of evidence of similar crimes where the state demonstrated no need whatsoever, was compounded by the failure of the trial court to give a cautionary instruction at the time the evidence was admitted, and further by his failure to give a cautionary instruction during the final instruction phase of the trial. I doubt that there is any jurisdiction which would hold that the failure to give such cautionary instructions as to the purpose and limited use of the testimony of similar offenses, would not be prejudicial error. Indeed, by its ruling requiring such cautionary instructions this Court has stated (or at least implied) that if they are not given, a reversal will follow just as surely as night follows day. But I am mystified by the total failure of the majority to consider whether defendant was prejudiced in this case because such instructions had not been given.

The record reveals that not one cautionary instruction was given as to the effect and limited use of considering evidence of similar crimes. The jury was, therefore, free to consider this evidence for any purpose at all, unconstrained by a limiting instruction from the court. Under the total facts of this case reversible error could not be more manifestly demonstrated.

In one breath this Court has announced that it is reversible error to fail to give such cautionary instructions, and in the next breath this Court has announced, by implication, that it doesn't really matter whether such instructions are given. The logic evades me, and the injustice to the defendant speaks for itself.

*THE MAJORITY FAILED TO GIVE FULL IMPLEMENTATION OF THE SPREIGL AND BILLSTROM CASES TO THE FACTS OF THIS CASE:*

In adopting the notice requirements and cautionary instruction requirements, the majority has relied on the rules set forth in *State v. Billstrom* (1967), 276 Minn. 174, 149 N.W.2d 281, and inferentially, the case of *State v. Spreigl* (1965), 272 Minn. 488, 139 N.W.2d 167. But to understand why *Billstrom* was given prospective application only, and why *Billstrom himself* was not given the benefit of the notice requirements, we must first discuss the *Spreigl* decision, for it was *Spreigl* which first set forth the fundamental notice requirement in relation to attempts by the state to prove defendant committed similar offenses other than the one specifically charged.

In *Spreigl*, defendant was charged with taking indecent liberties with his young stepdaughter. At trial two additional stepchildren testified that he had taken similar liberties with them. After rendering a detailed analysis of the rules and problems relating to admitting evidence of similar offenses, the court concluded that regardless of the admissibility of the evidence in this case, defendant Spreigl had not been given adequate notice that the state would offer the testimony of similar offenses. For this reason, the court ordered a new trial for *Spreigl* stating:

"Although the responsibility for weighing the delicately balanced and conflicting considerations involved in receiving prior related misconduct is largely within the discretion of the trial court, we conclude that we have gone as far as we think proper in approving its admissibility. Because of the serious misgivings we have long entertained in this connection, we now hold that *in the trial of this and future criminal cases* where the state seeks to prove that an accused has been guilty of additional crimes and misconduct on other occasions, although such evidence is otherwise admissible under some exception to the general exclusionary rule, it shall not hereafter be received unless within a reasonable time before trial the state furnishes defendant in writing a statement of

the offenses it intends to show he has committed, described with the particularity required of an indictment or information, *subject, however, to the following exceptions:* (a) offenses which are part of the immediate episode for which defendant is being tried; (b) offenses for which defendant has previously been prosecuted; and (c) offenses which are introduced to rebut defendant's evidence of good character." (Emphasis added.) 139 N.W.2d 172-173.

Although a new trial was ordered for *Spreigl* because of the state's failure to adequately notify him of its intent to use the testimony of the other stepchildren showing similar offenses committed upon them, the court, in adopting a strict notice requirement, expressly conditioned its application to *Spreigl himself "and to future criminal cases."* At the time of the *Spreigl* decision, December 17, 1965, *Billstrom* had already been tried but his *coram nobis* petition had not yet reached the Minnesota Supreme Court. Accordingly, when the *Billstrom* case came before the Minnesota Supreme Court, the court decided, relying on the specific language in *Spreigl* calling for prospective application only, that Billstrom was not entitled to the notice requirements which the court had set forth in *Spreigl.* Nonetheless, the court did take the opportunity in *Billstrom* to impose further notice requirements for the use of evidence of similar offenses, and to require a cautionary instruction at the time the evidence was admitted and during the final instructions given to the jury.

It is obvious that just as the court reversed the *Spreigl* conviction for failure to give notice of the intent to use evidence of other offenses, the same result should have been reached in this case. The sole issue involved in relation to the admission of evidence of other offenses in the *Billstrom case,* was the issue of identity, that is, of establishing that Billstrom was the person who had committed the specific crime charged (robbery). The court concluded that a special need was established at trial for the use of such evidence, and for that reason concluded that the evidence as properly admitted, stating:

"Evidence of other crimes is admissible only *if the trial court*

*finds the direct or circumstantial evidence of defendant's identity is otherwise weak or inadequate, and that it is necessary to support the state's burden of proof. It* should be excluded where it *is* merely cumulative and a subterfuge for impugning defendant's character or for indicating to the jury that he is a proper candidate for punishment." (Emphasis added.) 149 N.W.2d at 284-285.

The need to which the court referred was that the robbery victim could not positively identify Billstrom as the robber, but the state had evidence that defendant Billstrom had, within a two week period of the crime charged, committed two other robberies in the same area with the same *modus operandi.* Moreover, the need for the evidence was further heightened by defendant Billstrom's defense: He did not take the witness stand himself, but two witnesses testifying for him, established an alibi defense. Had this need not been clearly demonstrated it would have been patent error to admit evidence of similar robberies committed by defendant Billstrom..

By contrast to the *Billstrom* case, absolutely no need was demonstrated in this case to permit the prosecutrix to testify that the defendant had previously done the same thing to her a total of from ten to thirty times over a three year period. Indeed, the state did not contend at trial that this testimony was needed to prove its case-in-chief, the trial court did not so determine, and for that matter, neither did this Court determine that the evidence was needed.

## THE MAJORITY HERE INCORRECTLY DISTINGUISHED PEOPLE V. STANLEY, AND IGNORED THE CASE OF PEOPLE V. SCOTT, WHICH SETS FORTH THE CALIFORNIA RULE:

I do not agree, moreover, with the majority's analysis and failure to apply *People v. Stanley* (1967), 67 Cal.2d 812, 63 Cal.Rptr. 825, 433 P.2d 913. First, *Stanley* did not hold that under the California rule a sex offense such as the one in the present case, must be corroborated. Second, although *Stanley* would permit admission of similar offenses committed upon the prosecutrix under certain circumstances, it would not permit such testimony in the absence of

corroboration. Indeed, because there was no corroboration of previous offenses in the *Stanley* case, the case was reversed.

Here, there was no corroboration of the similar crimes testimony of the prosecuting witness, but the case is affirmed; a vast difference in result. Furthermore, lest there be any doubt on the subject, the majority ignored the case of *People v. Scott* (1978), 21 Cal.3d 284, 145 Cal.Rptr. 876, 578 P.2d 123. There, the California Supreme Court, citing *Stanley* as authority, reversed a case because the testimony of the prosecuting witness concerning previous similar sex offenses committed upon her by the defendant, was not corroborated. The Court held:

"Where the sole evidence of uncharged sexual conduct is the uncorroborated testimony of the prosecutrix herself, it is inadmissible since it contributes nothing to a determination of her credibility on the charged offenses and is highly prejudicial. (*People v. Stanley* (1967) 67 Cal.2d 812, 817, 63 Cal.Rptr. 825, 433 P.2d 913.) If, on retrial, prosecutrix' testimony appears to be the only basis for a reading of CALJIC instruction No. 10.35, it should therefore not be given. *Moreover, if the prosecution can offer no corroboration for her charge that defendant participated in the lewd conduct* [the alleged lewd conduct other than the specific crime charged], *all evidence concerning it should be excluded from any retrial.*" (Emphasis added.)

In reversing the case and granting a retrial, the court in *Scott* noted that a dismissal for insufficiency of the evidence was unwarranted because the prosecutrix' testimony on the specific crime charged did not require corroboration, and her testimony was not inherently improbable. The California rule is quite clear therefore, and is quite different than what the majority here has stated it to be. Under the rule announced in *Stanley* and *Scott*, the prosecutrix' testimony in this case, not being corroborated, would have been inadmissible. If admitted, the case would have been reversed.

The rule announced in *Stanley* and *Scott* has much to commend it. The basic premise is that a prosecutrix should not be permitted to corroborate her testimony concerning the offense charged by

testifying to previous offenses committed upon her without corroboration of those previous offenses. In essence, the State is permitted to raise itself (by the prosecutrix' testimony) by its own boot straps.

The distinctions between self-corroboration, which was permitted in this case, and corroboration by the testimony that defendant committed similar offenses with other girls, are set forth in 25 UCLA Law Rev. pp. 285-286, infra:

"The court [the California Supreme Court] expressly recognized the corroborative purpose of such evidence, acknowledging the truism that because the question of the parties' credibility is inherently at issue in a sex crime prosecution, there will generally be a need for corroboration. The determination of admissibility hinges on the source of the corroborative evidence: The complaining witness is precluded from self-corroboration; but evidence of the defendant's sexual misconduct, as attested by other victims, may properly corroborate the complaining witness's testimony.

". . .

"In cases involving alleged sex offenses where the victim is acquainted with the accused, identity is not at issue. Instead, the victim's credibility or apparent lack thereof may be determinative on the question of the defendant's ultimate guilt or innocence. In many sex crimes, where the only eyewitnesses are the complaining witness and the perpetrator, and where there is a dearth of independent physical evidence tending to establish the crime's commission, admission of corroborative evidence serves the dual purpose of reducing the probability that the prosecuting witness is lying, while at the same time increasing the probability that the defendant committed the crime."

Whether the evidence of similar offenses be from other alleged victims or from the prosecutrix herself, it is always inherently prejudicial. But to permit uncorroborated testimony from the prosecutrix as to past similar offenses, is to permit a gross injustice, not only to this defendant, but to all those who may in the future, be confronted with similar evidence. Absent a showing that the pros-

ecutrix is totally unworthy of belief, it is impossible to defend against.

*THERE IS A DANGER THAT THE RULES WILL BE MECHANICALLY APPLIED WITHOUT ANY REAL CONSIDERATION OF A PROPER BALANCING TEST:*

In adopting the notice requirements and cautionary instructions requirement, which I agree with, I believe that there may be a tendency by the trial courts to mechanically apply the rules for admission of such testimony, rather than a genuine attempt to assess all the factors involved before ruling on the admissibility.

Trial courts should keep in mind the essential nature of such testimony, as stated in 1 Wigmore *Evidence* (3rd ed.) §§ 193-194:

". . . That such misconduct is relevant, i. e. has probative value to persuade us of the general trait or disposition, cannot be doubted. The assumption of its probative value is made throughout the judicial opinions on this subject . . . "It may also be said that it is because of this indubitable relevancy of such evidence that it is excluded. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. Moreover, the use of alleged particular acts ranging over the entire period of the defendant's life makes it impossible for him to be prepared to refute the charge, any or all of which may be mere fabrications . . .

"The reasons marshalled in various forms are reducible to three: (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) the tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offenses; . . . (3) The injustice of attacking one neccesarily unprepared to demonstrate that the attacking evidence is fabricated . . ."

In discussing the general considerations which must be given to

the admission of such testimony, the majority stated:

"It is the rule that both trial courts and this Court are obligated to balance carefully the relative *probative value* of the evidence of other offenses *against* the *prejudice inherent in this type of evidence in light of the actual need to introduce such evidence.*" (Citing *State v. Skinner* (1973), 163 Mont. 58, 64, 515 P.2d 81, 84; *State v. Frates* (1972), 160 Mont. 431 at 437, 503 P.2d 47 at 50.) (Emphasis added.)

Clearly, the majority was at least given lip service to the principle that the primary consideration that must be assessed by the trial court, is the need for admission of the evidence of previous offenses.

I suppose this is illustrative of the very problem once the evidence has been admitted. Clearly, the trial court must balance probative value against the inherent prejudice and actual need to introduce such evidence. But rarely is it done in terms of a record being made of the reasons for the admission. Indeed, in this case, there is not the slightest indication in the record that the trial judge considered these factors and actually considered whether the actual need to introduce such testimony would outweigh the inherent prejudice. If the trial judge prefers to keep his reason for his ruling hidden in his bosom, there is a highly probable chance that he had no good reasons at all for his ruling, or that he was unable to articulate the reason for his ruling. That, in my view, is an abuse of discretion. This court should not have to speculate as to why the trial court admitted evidence of such inherently prejudicial nature.

Of course, the problems in admitting such evidence are thoroughly demonstrated by the majority opinion in this case. This Court must, the majority concludes, review the actual need for the evidence in light of its probative value on the one hand, and the inherent prejudice on the other. But nowhere in the majority opinion did they bother to address themselves to the *need* for introduction of this evidence in this case. Review of this nature, is no review at all.

The danger, of course, is that the trial courts and this Court will

mechanically apply the rule, much like the old statutory rule of impeachment for a previous conviction of a felony. Although the old statute specified that such evidence "may" be admitted, the trial courts invariably admitted such evidence. In my experience as a prosecutor and then as a defense attorney, I never saw a trial court refuse to admit evidence that a defendant had been previously convicted of a felony. Nor have I seen it since I have become a member of this Court. That rule, of course, is no longer with us, but I fear that the same mechanical application will apply to admitting evidence of previous offenses. There is the distinct danger that this Court will simply look at the record to see if defendant had the notice required and the cautionary instructions were given as required. If so, this Court will automatically affirm a conviction. That, of course, is not our function. But this case is a clear indication that we will be confining our review to such factors.

In terms of the state seeking admission of such evidence, it is rare that evidence of prior commission of similar crimes would not be covered by one of the exceptions stated in section 404(b), Mont.R.Evid., that is, that the evidence would tend to show a common *scheme*, *plan*, or *system*. It does not take an ingenious prosecutor to somehow work these three words into every contention that evidence of previous offenses should be admitted. He is bound to score on one of them. The essential problem has been accurately stated as follows:

". . . In·application, it often appears that the ruling on admissibility by the trial court, as reviewed on appeal for an abuse of discretion, depends on whether the evidence can be neatly categorized as a traditional exception to the general exclusionary rule.

". . .

"The basic problem with categorizing is that distinctions between the traditional exceptions tend to coalesce. The same evidence may be offered for several purposes, purportedly qualifying under more than one traditional exception. *By employing the tactic of offering the evidence under the rubric of more than one exception, the prosecution is more likely to succeed in getting the*

*damaging evidence before the jury . . ."* (Emphasis added.) 25 U.C.L.A. Law Rev. 261, pp. 278-279, *Comments: Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses.*

That is precisely what happened in this case. Rule 404, Mont.R.Evid., the basis upon which the evidence was admitted, provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge,* identity, *or absence of mistake or accident."* (Emphasis added.) Rule 404(b), Mont.R.Evid.

The shotgun approach towards admission of this kind of evidence, as depicted in the UCLA Law Review Article, supra, is precisely what took place at trial. In urging the trial court to admit the prosecutrix' testimony of previous offenses committed by the defendant upon the prosecutrix, the prosecutor stated:

"We would offer this testimony as an exclusion from the hearsay rule in that it goes to plan, motive, scheme, design, a common course of conduct, a single transaction involving a series of incidents with the same Defendant and the same victim who was always available to him . ."

It is difficult to imagine a broader theory for admissibility of evidence.

Defense counsel had several objections to this offer of proof, which included: many of the events were too remote in time; many of the events did not involve the same kind of conduct as was charged here; that the prosecutrix had never reported any of the previous incidents to anyone, thus casting serious doubt on her credibility; and that the passions of the jury would be so inflamed that it would be impossible for the defendant to have a fair trial.

There is no basis in the record to conclude that the trial court even might have given serious consideration to defense counsel's objections. The court simply rules, without any other comment:

"I think under the authorities that have been cited [*State v. Jensen*, supra, and *State v. Heine* (1975), 169 Mont. 25, 544 P.2d 1212] that the offer of proof will be allowed. The objection will be overruled. The motion for a mistrial will be denied."

Furthermore, the state, in its brief filed before this Court, also took the same shotgun approach towards the admissibility of the evidence: "It was offered specifically to show 'plan, motive, scheme, design, a common course of conduct . . .' "

Nowhere in the transcript of the trial, and nowhere in the briefs or oral arguments made to this Court, did the state ever contend that the evidence was needed to prove the state's case-in-chief. Although the majority in its opinion, has given some kind of lip service to a consideration of need for the evidence, it chose to ignore an analysis of whether such need was demonstrated in this case. Clearly, it was not.

Indeed the majority appears to have opened the barn door as wide as it will go in permitting testimony of such nature. In determining what the evidence tended to prove, the majority concluded:

"In Wisconsin, defendant arranged to be at home when the prosecutrix returned from school and no one else was there; in *Hays*, defendant stayed home while his wife was gone. *There is the hand of a plan with an ulterior motive carrying out an intent by scheme and design of the defendant that was a resultant common course of conduct.*" (Emphasis added.)

By comparing Rule 404(b), with the last emphasized sentence of the majority opinion, the only conclusion is that the evidence was properly admitted under all exceptions listed in Rule 404(b) (excluding the issue of *identity*, which was obviously not an issue at trial). By this ruling, it appears that the prosecution has been given carte blanche permission to shotgun its grounds for getting the prejudicial evidence to the jury.

I stress again that the *need* for the evidence is the *sine qua non* threshold requirement that the State must first cross in every case. It was not crossed in this case. What happened in this case is merely a reflection of what happens in the normal trial. Once a rule of ad-

missibility is established, the trial courts revert to a mechanical application of the rule, rarely if ever performing the proper balancing functions and reflective consideration required before ruling on the question of admissibility.

Now that the courts seem to have pulled out all stops to the admissibility of this kind of evidence, I would only hope that the trial courts of this state would be extremely judicious in their determination of whether or not to admit such evidence. If they are not, a fair trial for a defendant charged under such circumstances could become nothing but a mockery.

For all the above reasons, I would reserve the defendant's conviction and grant him a new trial. The evidence was inadmissible in the state's case-in-chief because no need was demonstrated and also because the testimoy was uncorroborated. Moreoever, because such testimony is uncorroborated, I would hold that the testimony would also be inadmissible in the state's rebuttal.