No. 13056

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

SOLOMON BITTON SIMTOB,

Defendant and Appellant.

_____

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Richard E. Gillespie argued, Helena, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General,
argued, Helena, Montana
Thomas Dowling, County Attorney, Helena, Montana
Charles A. Graveley, Deputy County Attorney, argued,
Helena, Montana

_____

Submitted: November 13, 1975

Decided: DEC 3 0 1975

Filed: DEC 3 1 1975

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of conviction of criminal sale of dangerous drugs entered on a jury verdict in Lewis and Clark County. The crime was committed in the city of Helena by defendant after he had journeyed to Helena from Billings. The state's witnesses testified generally as to being with the defendant at a party in Billings, hearing the conversation as to going to Helena via Bozeman, for, among other things, the purpose of obtaining drugs. The details of the trip were observed and monitered by undercover agents with all of the specifics as to the crime.

In the defendant's case, one Mike Ringquist was called as a witness for defendant. His testimony apparently was to establish that he was a close friend of defendant and had planned a trip with defendant about August 25 to go to Glacier Park on August 30, the date of the activity testified to by state witnesses. The witness was asked if he had heard all the testimony presented about the trip from Billings to Helena. So, his testimony was an obvious attempt to dispute or contradict the state's testimony as to the purpose of the trip and its details. Then the witness Ringquist was asked several questions by defendant's counsel concerning the use of drugs:

> "Q. Did the Defendant give any indication to you that he was going to purchase drugs and sell drugs? A. No sir.
>
> "Q. To your knowledge, did he have any drugs in his possession? A. No Sir.
>
> "Q. Were you going to use any drugs while you were in Glacier Park? A. No sir.
>
> "Q. Did you go on that trip with him? A. No sir, I had to work.
>
> "Q. The trip that we are talking about is the same one that he eventually went on with Mr. Desmul, is that right? A. Well, I don't know, I know him as Mr. Ferguson.
>
> "Q. Ferguson? A. Yes.

"Q. Why was it you couldn't go? A. I had to work that Saturday and they were leaving Saturday so I said, 'I just can't go.'

"Q. In the time that you were with and around Mr. Simtob in Billings, to your knowledge, did he use any drugs, traffic in drugs? A. Other than alcohol, no.

"Q. How much alcohol are you talking about? A. Well, I went out with him practically every night that he was in Billings and I say on two occasions that we had dinner parties and he had three, maybe four glasses of wine and every time whenever we went to a bar it was like one or two beers and then he started drinking seven-up.

"Q. Did he talk about using drugs? A. No sir, we didn't talk about drugs.

"Q. Did he have any opinion about drugs?

"* * * *

"Q. Did he make any statements about drugs? A. Not during that time."

By this witness and the line of questioning and his answers, it was obvious that the witness was attempting to establish a close relationship with the defendant; knew his habits; knew his plans; knew his general reputation; and, denied knowledge of his drug use. This tended to refute and contradict the testimony of the state's witnesses.

Then, on cross-examination, the state further developed these matters as to the witness' relationships and his exchange of letters. When pinned down the witness changed letters to a single letter. When pinned down further as to dates and places, the witness was finally forced to acknowledge that the defendant had been in the state prison during several months prior to August 19, 1974. Over objection, the State was allowed to elicit these answers from the witness who previously had painted what was obviously meant to be a picture of the defendant as a wholesome friend planning a trip to Glacier Park--which would refute and contradict the state's testimony.

Further, on rebuttal, the state was allowed to present evidence to the effect that defendant had a general reputation as one of the major drug pushers in Montana.

- 3 -

Here, the single issue, aside from a later issue mentioned hereinafter, is whether the trial court erred in ruling that defense counsel had brought the defendant's character and general reputation into issue and then allowed the state to question witnesses' knowledge of the defendant and his character and general reputation.

Defendant asserts that Mike Ringquist was not a character witness and that the questions and answers, partly quoted heretofore, were only for the purpose of soliciting firsthand knowledge of defendant's activities. Perhaps that was defendant's purpose in asking the questions but the answers revealed a lack of candor and truthfulness as well as an attempt to present defendant as a person of good character, particularly as to lack of any connection with drugs or any purpose for the trip to Helena testified to by the state's witnesses. The cross-examination and rebuttal was confined to the particular trait of character impugned in the crime with which the defendant was charged and to which the state's witnesses had testified and defendant's witness attempted to contradict and discredit.

Such questioning is proper. State v. Cor, 144 Mont. 323, 396 P.2d 86; State v. Moorman, 133 Mont. 148, 321 P.2d 236; Section 93-1901-7, R.C.M. 1947. In State v. Turley, 164 Mont. 231, 234, 521 P.2d 690, this Court said:

> "* * * such evidence was brought out on direct examination of appellant by appellant's own counsel. Having done so, he cannot now complain."

We find no error.

The final issue was raised as a supplemental issue challenging the statute under which defendant was charged as to the definition of "dangerous drugs". We will not repeat the details of the challenge here because the issue was settled by this Court's opinion in State ex rel. Lance, Petitioner v. District Court,

_____Mont._____, _____P.2d_____, 32 St.Rep. 1119, this Court's Cause No. 13167, decided November 12, 1975.

Finding no error the judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 5 -