No.  89-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

    Plaintiff and Respondent,

  v.

ROBERT A. SORENSEN,

    Defendant and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      David W. Harman, Libby, Montana

      For Respondent:

      Hon. Marc Racicot, Attorney General, Helena Montana

      Scott B. Spencer, Lincoln County Attorney, Libby,
      Montana

Submitted on Briefs:  March 22, 1990

Decided:  May 3, 1990

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

A jury in the District Court for the Nineteenth Judicial District, Lincoln County, found Robert A. Sorensen guilty of multiple counts of criminal possession, possession with intent to sell, conspiracy to sell, and sale of marijuana. He appeals. We affirm.

The issues are:

1. Did the District Court err in denying Sorensen's pretrial motions to suppress evidence on grounds of illegal arrest and search and violation of Sorensen's right of privacy?

2. Did the court err in allowing Wayne Wagner to testify?

3. Did the court err in allowing into evidence the photograph of a person in a marijuana patch?

4. Did the court err in denying Sorensen's severance motion?

5. Did the court err in denying Sorensen's motion to dismiss for insufficient evidence?

6. Was Sorensen denied his right to speedy trial?

7. Was Sorensen denied his right to a fair trial because of cumulative error?

During the summer of 1988, the Lincoln County Sheriff's Office received information from a confidential informant that marijuana was growing in a field in a remote area near Troy, Montana. Upon investigating, officers found other marijuana patches in the same area. The marijuana plants were growing in a mixture of peat and

potting soil. The smaller plants were in Grodan brand starter cubes. Nursery stakes, styrofoam cups, plastic five-gallon buckets, chicken wire, and "twisty ties" (used to secure garbage bags) were found in the fields. All of the marijuana patches were located on United States Forest Service land, and United States Forest Service and United States Fish and Wildlife agents joined in the investigation. Surveillance cameras were set up in several of the marijuana patches.

Later that summer, an informant told Officer Bernall of the Lincoln County Sheriff's Office that defendant Sorensen was growing the marijuana on the Forest Service property and storing it at his land, and that Sorensen was a "major dealer" in marijuana. Sorensen owned and lived on one of eight twenty-acre parcels in a subdivision near the marijuana patches. Law enforcement personnel began watching Sorensen's property. They observed a padlocked bunker with ventilation vents, several other out-buildings, and two gardens in which nothing was planted. Photographs from the surveillance cameras in the marijuana patches showed two people believed to be tending the marijuana, a man, believed to be Sorensen, and a woman.

On the afternoon of August 17, 1988, Wayne Wagner was observed entering Sorensen's house. When he left the house, he carried a duffel bag which appeared to be full. The same afternoon, Sorensen discovered one of the officers doing surveillance on his property.

Afterward, other officers doing surveillance saw Sorensen jump onto his motorcycle, go to where Wagner was camping on nearby Forest Service land, yell and whistle for Wagner, and engage in an animated conversation with Wagner. Sorensen and Wagner then returned to Sorensen's house. The officers immediately initiated proceedings to obtain a search warrant and, about an hour later, arrested Sorensen.

When the search warrant arrived, the officers searched Sorensen's property. Among the items discovered were loaded weapons and books on growing marijuana. One book described in detail how to grow wild marijuana without getting caught. The officers also found plastic five-gallon buckets, 251 styrofoam cups, 141 Grodan starter cubes, peat, chicken wire, 47 bags of potting soil, and "twisty ties." A plastic bucket found in one of Sorensen's vehicles was the same bucket on which, days before, an officer had scratched his initials in one of the marijuana patches. The officers also found notebooks which contained what they believed were coded watering schedules for the marijuana patches. Wagner's duffel bag was seized from his camp. It contained a waterproof bag of marijuana.

Also seized from Sorensen's house was a power bill from a home he owned in Spokane, Washington. The officers felt that the amount of the bill was suspiciously high. Pursuant to a Washington search warrant, the home was searched. Grow lights, Grodan starter cubes,

drying racks, many marijuana plants, and packaged marijuana were found.

The information filed against Sorensen in Montana District Court included nine counts of felony possession of dangerous drugs with intent to sell, one count for each of nine marijuana patches. Sorensen was also charged with one count of sale of a dangerous drug to Wayne Wagner and one count of conspiring with Wagner to commit the sale of dangerous drugs. After a five-day jury trial, Sorensen was convicted of three misdemeanor counts of possession of marijuana, six counts of felony possession with intent to sell, and the counts of felony sale and conspiracy. He appeals.

I

Did the District Court err in denying Sorensen's pretrial motions to suppress evidence on grounds of illegal arrest and search and violation of Sorensen's right of privacy?

Montana's Constitution provides, at Article II, Section 10, that "[t]he right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Sorensen contends that this provision protected him from trespass on his property by law enforcement officers. While the officers have not acknowledged that they trespassed on his property, Sorensen maintains that they must have, in order to see his buildings in the detail in which they were described in the search warrant.

The protection afforded under Montana's constitutional right of privacy is broader than the right of privacy guaranteed under the United States Constitution. State v. Sierra (1985), 214 Mont. 472, 692 P.2d 1273. However, it is not boundless. The "open fields" doctrine, providing that the right of privacy in one's home does not extend to open fields within the view of the public, has been recognized under Montana's right of privacy. State v. Charvat (1978), 175 Mont. 267, 269, 573 P.2d 660, 661. Sorensen argues that because his property is heavily wooded, the open fields doctrine does not apply. But we hold that Sorensen did not have a legitimate expectation of privacy which would prevent law enforcement officers from observing the buildings on his unfenced twenty acres of land.

Sorensen further contends that he was illegally arrested at his home at night without a warrant. Section 46-6-401, MCA, sets forth the circumstances under which a police officer may make an arrest. Sorensen argues that none of the listed circumstances were present in this case.

We disagree. Subsection (1)(d) of § 46-6-401, MCA, provides that an officer may make an arrest without a warrant if "he believes on reasonable grounds that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest." At the time Sorensen was arrested, officers knew that someone was growing

6

marijuana on federal land, and they believed that it was Sorensen. Sorensen was now aware that he was under surveillance, and a summer-long investigation was in jeopardy. Given the opportunity, Sorensen would have every reason to destroy evidence on his property connecting him to the marijuana patches. We conclude that the exigent circumstances required Sorensen's immediate arrest to prevent destruction of evidence on his property.

Sorensen also claims that the application for the search warrant for his property was inadequate because it did not establish probable cause and contained material falsehoods. The District Court considered the application for the warrant as though it did not contain four paragraphs which Sorensen successfully argued were in error. Even in the absence of those paragraphs, the court held that the application set forth probable cause for the issuance of a search warrant.

Without the paragraphs which were in error, the application alleged that the affiant (Officer Bernall) had been told and shown by a citizen informant that marijuana was growing in a certain field in the Troy area. It stated that a confidential, credible, and reliable informant had told the affiant that Sorensen was involved in marijuana and grew "acres" of it; that nine other fields of marijuana had been discovered on Forest Service land to the northeast, west, and south of Sorensen's property; that the marijuana plants were cultivated and were set in a peat moss and

potting soil mixture; that Forest Service employees had observed a peat moss bed on Sorensen's property; and that the informant had said that Sorensen stored marijuana in a bunker on his property and a bunker had been observed on Sorensen's property. It also stated that two years earlier, marijuana fields which had been observed in the same general area were destroyed and that the parents of two juveniles reported to police that Sorensen had threatened bodily injury to the juveniles, who he believed had destroyed the fields.

We hold, as did the District Court, that the application contained sufficient information to provide probable cause to issue the search warrant for Sorensen's property.

## II

Did the court err in allowing Wayne Wagner to testify?

Wayne Wagner was called by the prosecution to testify as an accomplice and co-conspirator. He testified that he obtained the marijuana found in his duffel bag from unnamed persons in Bonner's Ferry, Montana. The prosecution impeached him with his previous statement (to one of the officers who arrested him) that he got the marijuana from Sorensen and that he had established a regular clientele to whom he sold marijuana. Sorensen argues that the State should not have been allowed to call Wagner as a witness because its only purpose in calling him was to impeach his testimony with his earlier statement implicating Sorensen.

8

Sorensen cites federal case law holding that where the primary purpose of calling a witness is to impeach that witness with a previous statement, the rule against hearsay precludes the testimony and overrides the right to impeach the witness's credibility. E.g., United States v. Hogan (5th Cir. 1985), 763 F.2d 697. Those holdings are premised on Rule 607, Fed.R.Evid. Montana has not adopted that interpretation of the comparable Montana rule.

Rule 801(d)(1), M.R.Evid., provides that if a declarant testifies at trial and is subject to cross-examination on a prior inconsistent statement, the prior statement is not hearsay. We conclude that, in this instance, sufficient indicia of reliability were provided by the defense's right to cross-examine Wagner on the prior statement and the jury's concomitant opportunity to determine whether the prior statement or Wagner's testimony at trial was more worthy of belief. We hold that the District Court did not err in allowing Wagner's testimony.

III

Did the court err in allowing into evidence the photograph of a person in a marijuana patch?

The State introduced into evidence a photograph from a marijuana-growing magazine seized from Sorensen's house. The photo showed a man standing in what appeared to be a marijuana patch. Officer Bernall testified that he believed the person in the photo

9

was Sorensen. Sorensen contends that the person in the photo did not look like him and that it was an abuse of the court's discretion to allow the photo into evidence. He contends that the prejudicial effect of the photo outweighed its probative value. He also claims that the photo should not have been admitted without notice of other crimes evidence as required by this Court's opinion in State v. Just (1979), 184 Mont. 262, 602 P.2d 957.

It is not a crime to stand in what appears to be a marijuana field. There was no need for Just notice before the photo could be introduced into evidence. Further, Sorensen took full advantage of his opportunity at trial to argue to the jury that the man in the picture was not him. And, in relation to all of the evidence against Sorensen presented at trial, the photo's prejudicial effect is questionable. We conclude that Sorensen has not shown that the District Court abused its discretion in admitting the photo into evidence.

### IV

Did the court err in denying Sorensen's severance motion?

Sorensen argues that trial of the conspiracy and sale counts should have been severed from trial on the other counts charged against him because the evidence on these two counts was so weak. He claims that the District Court's failure to grant his motion to sever was an abuse of discretion warranting reversal.

Sorensen makes only a general allegation of prejudice from "the sheer overwhelming number of counts" with "only circumstantial evidence for proof." On the other hand, several reasons support joinder of trial on all counts. All of the offenses were committed in the summer of 1988. As the State presented its case, they were all part of a common scheme to gain financial benefit from the sale of marijuana. Proof and witnesses overlapped on the charges. We conclude that the charges brought against Sorensen in this action were, in the words of § 46-11-404, MCA, "connected together in their commission." Sorensen has not made a sufficient showing that he was prejudiced by the joinder to warrant overruling the District Court's discretion in denying the motion to sever.

V

Did the court err in denying Sorensen's motion to dismiss for insufficient evidence?

At the conclusion of the State's case, Sorensen moved to dismiss the possession counts against him on the grounds of insufficient evidence. The District Court denied the motion. Sorensen argued, and again argues here, that the State did not adequately tie him personally to the marijuana fields.

The District Court's standard of review on the motion to dismiss, like our standard of review on appeal, was whether any rational trier of fact could have convicted Sorensen of the

offenses with which he was charged. See State v. Rodriguez (Mont. 1981), 628 P.2d 280, 283, 38 St.Rep. 578F, 578I.

The evidence tying Sorensen personally to the marijuana patches included: pictures of a person believed to be Sorensen on an ATV (all-terrain vehicle) near the marijuana fields and Sorensen's similar ATV, found in the search of his property; the proximity of the marijuana patches to Sorensen's property; the bucket with the officer's initials scratched on its bottom, found in Sorensen's vehicle; the books on growing wild marijuana; the drying racks, peat, potting soil, plastic buckets, and other gardening supplies found in Sorensen's house; and the notebooks containing what appeared to be watering codes. We hold that there was sufficient evidence that a rational trier of fact could have found Sorensen guilty of the charges in Counts I through IX.

Sorensen also argues that Wagner's testimony alone is insufficient to convict him on the sale and conspiracy counts. However, Wagner's testimony was not the only evidence relating to those charges. Other evidence presented by the State as to the counts of sale of marijuana and conspiracy to sell marijuana included the following: the marijuana from Wagner's duffel bag and the officers' testimony about when it got there; the sheer amount of both the marijuana crop and the gardening equipment on Sorensen's property; the evidence from Sorensen's Spokane house, including marijuana packaged for sale; weapons and ammunition which

linked Sorensen's Spokane house with his house outside Troy; and the contrast between Sorensen's small claimed income and his large apparent expenditures. We conclude that based on the evidence presented at trial a rational trier of fact could have found Sorensen guilty of the charges of sale and conspiracy to sell marijuana.

## VI

Was Sorensen denied his right to speedy trial?

Four factors are considered in evaluating a claim of denial of the right to speedy trial: the length of the delay, the reason for the delay, the defendant's assertion of the right to speedy trial, and prejudice to the defendant resulting from the delay. State v. Curtis (Mont. 1990), 787 P.2d 306, 313, 47 St.Rep. 277, 283. The first factor, length of the delay, serves as a trigger to a speedy trial inquiry. Curtis, 787 P.2d at 313.

A period of 250 days elapsed between Sorensen's arrest and his trial. That period is sufficient to trigger a speedy trial inquiry. State v. Waters (1987), 228 Mont. 490, 493, 743 P.2d 617, 619.

Sorensen claims that the entire 250-day delay is attributable to the State and that he was denied his right to speedy trial by this delay. A chronology of relevant events includes:

13

| | | |
|---|---|---|
| August 17, 1988 | - | Sorensen arrested |
| August 30, 1988 | - | Sorensen released on bail |
| September 15, 1988 | - | Information filed |
| September 22, 1988 | - | Sorensen moved for a substitution of district judge |
| October 6, 1988 | - | Judge Wheelis assumed jurisdiction |
| November 14, 1988 | - | Arraignment; Sorensen filed motions to sever and to suppress evidence |
| November 21, 1988 | - | Judge Wheelis recused himself |
| November 30, 1988 | - | Judge Harkin assumed jurisdiction |
| March 23, 1989 | - | Trial set for April 26, 1989 |
| April 7, 1989 | - | Pretrial motions heard; Sorensen's motions to suppress were denied |
| April 14, 1989 | - | Sorensen moved to dismiss for lack of speedy trial |
| April 24, 1989 | - | Speedy trial motion denied |
| April 26, 1989 | - | Trial commenced |

Sorensen argues that he was forced to move for a substitution of district judge because Judge Keller, who was originally assigned the case, was the judge who had authorized the search warrant for Sorensen's house. Sorensen did not want the judge who had originally determined that there was probable cause for the search to preside at the suppression hearing on the same issue.

Any delay caused by the defendant's assertion of procedural rights will not weigh against the State. State v. Kelly (1983), 203 Mont. 159, 160-61, 661 P.2d 26, 27. Sorensen's motion for

14

substitution of district judge was an assertion of a procedural right, and there is no indication that the State purposely "forced" this occurrence. We hold that the time between September 22, 1988, and October 6, 1988, is not chargeable to the State. The time during which Sorensen's motions to suppress were pending, from November 14, 1988, to April 7, 1989, is not totally chargeable to either party. Some of that delay resulted from Judge Wheelis recusing himself and some resulted from the heavy caseload of the deputy county attorney, as stated in his affidavit before the District Court. That leaves only sixty-six days. That time includes institutional delays inherent in calendaring the case and as a result of Judge Wheelis's retirement.

Sorensen asserted his right to speedy trial in a timely manner by moving to dismiss for lack of speedy trial on April 14, 1989. That motion was denied. As to the prejudice caused by the delay, this Court looks to three interests: preventing oppressive pre-trial incarceration, minimizing the defendant's anxiety and concern, and limiting the impairment of the defense. Curtis, 787 P.2d at 315. Because Sorensen was out on bail, the first interest has no weight. He has not shown anxiety and concern greater than that inherent in being accused of a crime. He has not shown prejudice to the defense of his case resulting from the delay. He does argues that he was deprived of his livelihood from his coin

shop during the delay because his inventory of coins was seized in the search of his house.

To summarize, while the total delay in this case was long enough to trigger a speedy trial inquiry, the portion of the delay attributable to the State can largely be explained as time institutionally necessary in scheduling a trial. While Sorensen raised his right to speedy trial in a timely manner, he has not demonstrated significant prejudice from the delay. After considering the four speedy trial factors collectively, we hold that the State did not violate Sorensen's right to a speedy trial.

VII

Was Sorensen denied his right to a fair trial because of cumulative error?

Sorensen argues that he was denied his right to a fair trial because of the cumulative effect of improperly admitted evidence of prior acts without notice to the defense, the improper use of Wagner's testimony, the introduction of irrelevant exhibits, and the court's failure to sever the conspiracy and sale counts.

We have discussed most of these issues individually and have concluded that Sorensen has not shown error. Application of the doctrine of cumulative error requires a finding of prejudicial error affecting the substantial rights of the defendant. State v. Close (Mont. 1981), 623 P.2d 940, 948, 38 St.Rep. 177, 187-88. We

16

hold that Sorensen has shown no prejudicial error which deprived him of his right to a fair trial.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices