No. 92-236

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

FILED

DEC 1 - 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

JOHN MICHAEL SHAW,

     Defendant and Appellant.

---

APPEAL FROM:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        S. Charles Sprinkle, Douglas & Sprinkle, Libby, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana
Scott Spencer, Lincoln County Attorney, Libby, Montana

---

Submitted on Briefs:  October 8, 1992

Decided:  December 1, 1992

Filed:

'Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Nineteenth Judicial District, Lincoln County, the Honorable Robert S. Keller presiding. Appellant John Michael Shaw (Shaw) appeals from a judgment entered on a jury verdict finding him guilty of conspiracy to sell dangerous drugs, a felony, in violation of § 45-4-102, MCA. We reverse and remand.

The issues are:

1. Did the District Court err in allowing rebuttal testimony over defense counsel's objections that the testimony violated the notice requirements of State v. Just (1979), 184 Mont. 262, 602 P.2d 957, as modified in State v. Matt (1991), 249 Mont. 136, 814 P.2d 52 (the Modified Just Rule), and that the testimony exceeded the scope of cross-examination?

2. Did the District Court err in refusing Shaw's Proposed Jury Instruction No. 21?

The Lincoln County Sheriff's Office conducted an undercover drug investigation from September 1990 to May 1991. Klint Gassett served as the primary detective in the investigation and Hal Turner served as the undercover agent. During the course of that investigation, the sheriff's office obtained sufficient evidence to charge Rodney Reynolds (Reynolds). In order to further the investigation, Gassett offered Reynolds a deal in which Reynolds would work as an agent for the sheriff's office in return for a recommended suspended sentence and a fine. Reynolds agreed.

2

The officers provided Reynolds with the names of people, including Shaw and Brian Kair, from whom they wanted Reynolds to try to purchase drugs. Reynolds and Shaw had known each other for a number of years. Reynolds did not know Kair well enough to approach him directly, so he decided to go through Shaw as a means of introduction because Shaw and Kair knew each other well.

Reynolds approached Shaw at the Libby softball fields after practice on May 2, 1991, and asked Shaw if he could get him a pound of marijuana or some cocaine. Reynolds testified at trial, "He [Shaw] said he'd check it out." Shaw testified as follows:

> I told him that the whole team was going to go down to the Mint and I was sure that there was somebody down there that would sell drugs, and that I could probably line him up with somebody that I knew on the team, or whatever.

After practice, Shaw went to the Mint with other team members because the Mint sponsored his softball team. Reynolds also went to the Mint later that day. When he entered the bar, he approached Shaw and the two of them went into the restroom for privacy. Shaw then left the restroom to get Kair. Up to that point Shaw had made no effort to contact anyone about the drugs. When Shaw and Kair returned to the restroom, Shaw told Kair that Reynolds wanted to buy some drugs. Reynolds and Kair then discussed drugs for ten to fifteen minutes. Although Shaw listened to the conversation, he did not take part in it. Reynolds and Kair agreed to meet at the Legion Bar two days later. Shaw did not make further contacts or participate in the deal after making the introduction.

Reynolds and Kair met at the Legion Bar on Saturday as they had planned. Kair did not have the drugs at that time, but set

3

Sunday or Monday as a follow-up date. Reynolds then called Kair on Sunday to see if he could get a sample of the marijuana. Later that day he went to Kair's residence where he gave Kair's wife, Jenny, $400 as payment for a four ounce sample of marijuana. The marijuana was supposed to be delivered on Monday. This is the last time Reynolds had contact with any of the people involved.

On May 7, 1991, the Lincoln County Attorney filed a complaint charging Shaw with conspiracy to sell dangerous drugs, a felony, in violation of § 45-4-102, MCA. A jury found Shaw guilty of the crime charged.

I

Did the District Court err in allowing rebuttal testimony over defense counsel's objections that the testimony violated the notice requirements of State v. Just (1979), 184 Mont. 262, 602 P.2d 957, as modified in State v. Matt (1991), 249 Mont. 136, 814 P.2d 52 (the Modified Just Rule), and that the testimony exceeded the scope of cross-examination?

During the trial, the State recalled Detective Gassett. During that portion of his testimony, Detective Gassett stated that a search warrant had been issued for the Kair residence. On cross-examination, defense counsel, Mr. Sprinkle, brought out the fact that a search warrant was not issued on Shaw's residence.

Q. [By Mr. Sprinkle] And you never executed a search warrant on John's house and recovered any drugs or paraphernalia, did you?

A. We didn't have any reason to do the search warrants on John's house.

On redirect examination, the county attorney, Mr. Spencer, then

4

elicited the following testimony from Detective Gassett.

Q. You were asked on cross some question about searching Shaw's house. Did you hear that?

A. Yes.

Q. What was that question again?

A. Did we do a search warrant on Shaw's residence, or why didn't we do a search warrant.

Q. Looking for paraphernalia or something?

A. Yeah.

Q. And you did not, did you?

A. No, we did not.

Q. Does that mean you did not have reason to believe that, other than what Rodney Reynolds said, that Brian Shaw was involved in drugs?

A. John Shaw?

Q. John Shaw. I'm having a terrible time with these names. Dyslexia, I guess.

A. Just because we didn't do a search warrant doesn't mean anything.

Q. Did you in fact have other evidence that tends to show that John Shaw was involved in drugs?

At this point, Mr. Sprinkle objected to the question as, among other things, beyond the scope of cross-examination and prejudicial. In conference, Mr. Sprinkle argued that his line of questions to Detective Gassett went to show the jury that no evidence existed, other than the events of May 2, 1991, on which to charge Shaw with conspiracy. The State argued, and the court agreed, that Mr. Sprinkle had opened the door with his question about the search warrant.

When the questioning continued, the following exchange

5

occurred:

> Q. [By Mr. Spencer] Now, Klint, when we broke we were talking about -- I'm not sure what we were talking about, but talking about the search warrant, and is that the only basis you had, or whatever. You recall that question?
>
> A. Yes, sir.
>
> Q. Now -- and that is yes or no. Do you have other basis for your determinations that we're talking about here with John Shaw?
>
> A. Yes.
>
> Q. Are those based on -- is that based on information provided to you as part of this undercover operation by Hal Turner?
>
> A. Yes.
>
> Q. Is Hal Turner the undercover agent that was hired?
>
> A. Yes, from September to May of '91.
>
> Q. Right. I'm not sure if I ever asked that.

At this point Mr. Sprinkle objected to the testimony on the basis of lack of notice as required by _Just_. (We point out that the proper authority would have been _Matt_.) The District Court overruled this objection and Mr. Spencer continued.

> Q. One additional question. Is this also based on documented information you have of several years ago?
>
> A. Yes.
>
> Q. Point of fact, eight years ago?
>
> A. Yes.

We disagree with the District Court's rulings on this matter. We find that this testimony exceeded the scope of cross-examination and was allowed in violation of the notice requirements of the Modified _Just_ Rule.

6

Rule 611(d), M.R.Evid., governs the scope of redirect examination. It provides:

> Re-examination and recall. A witness may be re-examined as to the same matters to which the witness testified only in the discretion of the court, but without exception the witness may be re-examined as to any new matter brought out during cross-examination. . . .

The trial court "has wide discretion in determining the scope and extent of re-examination as to the new matters brought out on cross-examination." Cline v. Durden (1990), 246 Mont. 154, 161, 803 P.2d 1077, 1081; State v. Heaston (1939), 109 Mont. 303, 316, 97 P.2d 330, 336. We therefore look to whether the District Court abused its discretion by allowing the above testimony from Detective Gassett.

On cross-examination, Mr. Sprinkle asked a series of questions intended to show that no evidence existed, other than the introduction and conversation of May 2, 1991, to establish that Shaw was involved in this conspiracy to sell drugs. In doing so he merely asked Detective Gassett whether a search warrant had been issued for Shaw's residence. Throughout the trial, he had not denied that Shaw was ever involved in drugs. However, the court determined that this line of questioning was intended to imply that Shaw's involvement in this matter was purely coincidental. The court then ruled that Mr. Sprinkle opened the door to testimony about Shaw's prior acts or wrongs of eight years ago.

The State relies on State v. Simtob (1975), 168 Mont. 495, 544 P.2d 1210, and State v. Mix (1989), 239 Mont. 351, 781 P.2d 751, in arguing that Mr. Sprinkle opened the door to this testimony. In Simtob, the defendant's witness testified that the defendant did

7

not use or traffic in drugs. On cross-examination the State was allowed to bring out the fact that the defendant had been in prison, and on rebuttal the State was allowed to present evidence that the defendant had a reputation as a major drug dealer in Montana. This Court upheld the District Court's ruling that defense counsel had brought the defendant's character and reputation in issue and that cross-examination and rebuttal testimony were proper.

In Mix, the defendant testified as to his general character as a peace loving man. This Court upheld the District Court's ruling which allowed the State to present rebuttal testimony concerning the defendant's prior attacks on the victim because the defendant had opened the door to evidence regarding his peaceful character. We do not find Simtob or Mix to be controlling.

We do not find that this single question regarding a search warrant can be construed as a suggestion that Shaw was innocent of all drug related activity or that it brought his character into issue. Therefore, the evidence was inadmissible under Rule 404(a)(1), M.R.Evid., which allows the State to rebut a defendant's character evidence with its own evidence. As we hold that the State could not introduce character evidence on these facts, the rule noted in Mix, whereby evidence of other crimes, wrongs, or acts may be introduced under Rule 404(a)(1) without meeting the Just notice requirements, does not apply.

The State further argues that the requirements of Just (more accurately Matt) do not apply because Detective Gassett's testimony did not constitute "other crimes" evidence under Rule 404(b),

8

M.R.Evid. That rule provides:

> Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The State relies on State v. Sorensen (1990), 243 Mont. 321, 792 P.2d 363, where this Court rejected the defendant's argument that a photograph of a person standing in a marijuana patch constituted other crimes evidence. The officer in that case testified that he thought the man in the picture was the defendant. In that case we noted that it is not a crime to stand in what appears to be a marijuana patch, the defendant took full advantage of his opportunity to argue to the jury that the man in the picture was not him, and the photo's prejudicial effect was questionable in relation to all the other evidence presented at trial. In contrast, in the present case Detective Gassett was allowed to testify directly that he had documented evidence tending to show that Shaw was involved in drugs. This is more than a "mere suggestion of illegal or improper conduct" as argued by the State. It is an affirmative statement that the authorities had documented evidence of Shaw's prior drug related activity. As such, Shaw was entitled to notice that the information would be brought out at trial.

We hold that the District Court abused its discretion by allowing the State to introduce this evidence.

II

Did the District Court err in refusing Shaw's Proposed Jury

9

Instruction No. 21?

Shaw was charged with violating the conspiracy statute. That statute provides:

> **45-4-102. Conspiracy.** (1) A person commits the offense of conspiracy when, with the purpose that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement has been committed by him or by a coconspirator.
>
> . . .

Shaw sought to have the following instruction given to the jury:

> There can be no conspiracy between a defendant and one who only feigns acquiescence in a crime; however, if an undercover agent acts in conjunction with more than one person to violate a law, his participation will not preclude a conviction of the others for a conspiracy among themselves.

During the settling of instructions, the State argued, and the court agreed, that "[y]ou can have a conspiracy between two people, one of which is an undercover agent who has no intention of breaking the law. That's settled case law." However, the State admits to the contrary in its brief, and cites extensive case law on the matter. It is well established that:

> "There is neither a true agreement nor a meeting of the minds when an individual 'conspires' to violate the law with only one other person and that person is a government agent." . . . An individual must conspire with at least one bona fide co-conspirator to meet the formal requirements of a conspiracy.

United States v. Schmidt (9th Cir. 1991), 947 F.2d 362, 367 (citation omitted); United States v. Kelly (11th Cir. 1989) 888 F.2d 732 (it is legally impossible to conspire with a government

10

agent); United States v. Giry (1st Cir. 1987), 818 F.2d 120 (it takes two to conspire and a government informer is not a true conspirator), cert. denied, 484 U.S. 855 (1987).

The State argues that the proposed instruction is only relevant in cases involving one defendant, and that it was not relevant in this case where there were two individuals other than the government agent involved--Shaw and Kair. We disagree given that the State argued on numerous occasions during its closing argument that a conspiracy could have arisen between Shaw and Reynolds. That is not the law. Shaw was entitled to an instruction that limited the jury to finding a conspiracy between Shaw and Kair; in fact, the instruction was necessary given the State's argument to the jury. The first part of this instruction serves that purpose. Furthermore, contrary to the State's argument, the proposed instruction does encompass the situation where more than one individual and a government agent are involved. The second part of the instruction covers that situation.

We hold that the District Court erred in refusing to give Shaw's Proposed Jury Instruction No. 21.

We reverse and remand for a new trial in conformity with the foregoing.

_____
John Conway Harrison
Justice

We concur:

_____
Chief Justice

11

Karla M. Gray

William E. Hunt

Terry Trieweiler

_____

R. C. McDonough

Justices