DA 11-0536

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 39

STATE OF MONTANA,

　　　　　Plaintiff and Appellee,

　　v.

PETER EARL CASWELL,

　　　　　Defendant and Appellant.

APPEAL FROM:　　District Court of the Nineteenth Judicial District,
　　　　　　　　　In and For the County of Lincoln, Cause No. DC 10-82
　　　　　　　　　Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

　　　　　For Appellant:

　　　　　Colin M. Stephens; Smith and Stephens, P.C; Missoula, Montana

　　　　　For Appellee:

　　　　　Timothy C. Fox, Montana Attorney General; Tammy K Plubell,
　　　　　Helena, Montana

　　　　　Bernard G. Cassidy, Lincoln County Attorney; Libby, Montana

　　　　　　　　Submitted on Briefs:　December 12, 2012

　　　　　　　　　　　　　　　Decided:　February 19, 2013

Filed:

　　　　　_____
　　　　　　　　　　　　　　Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     A jury convicted Peter Earl Caswell (Caswell) of sexual intercourse without consent and partner/family member assault in the Nineteenth Judicial District Court, Lincoln County.  Caswell argues that his due process rights were violated when a portion of the trial was not recorded during the State's case in chief and effective appellate review is now unavailable.  Caswell also argues that the District Court erred by admitting evidence of Caswell's prior assault on the victim.  We affirm.

¶2     We consider the following issues:

¶3     *1. Was the defendant's right to due process violated by the failure to record a portion of the State's case in chief?*

¶4     *2. Did the District Court abuse its discretion by admitting evidence of the defendant's prior assault of the victim?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     Caswell and Beth Caswell (Beth) were married for more than 40 years and had five children together, all of whom are now adults.  Caswell and Beth have lived separately since March 26, 2009, when an argument between Caswell and Beth escalated into an altercation in which Caswell punched Beth several times in the face.  Beth sustained injuries, including a black eye and a swollen face.  Caswell was arrested by Captain Bo Pitman of the Lincoln County Sheriff's Office and was ultimately convicted of one count of misdemeanor partner/family member assault arising from the incident.

2

¶6     Caswell left the Lincoln County area for about a year after this assault but returned in the spring of 2010, renting a house in Eureka.  Although separated, Caswell and Beth had occasional contact.  Beth lived in a small cabin on 12.5 acres of land owned by her son, Ian, who also lived on the property, in an isolated area approximately 30 miles from Eureka.  Beth occasionally took care of Caswell's dog.  Caswell knew that he was expected to call before going to Beth's cabin, and Ian was usually present for those visits.  Caswell took an extended trip to the eastern United States in the summer of 2010.  During his return trip he called Beth frequently and told her he was returning to Eureka and did not want a divorce.  Beth expressed her disfavor with his return and his intentions about the marriage.  Caswell became stranded on the trip and Beth sent him money.  Caswell returned on August 11, 2010, and, with Beth's permission, drove to Beth's cabin that night to drop off his dog.  Ian was there, and they ate dinner.  Caswell tried to convince Beth to reconcile and became agitated when she disagreed, leaving angrily.  Beth was afraid Caswell would return and Ian slept on her couch that night.  Caswell called Beth the next day and apologized.  He then made further arrangements with her to take care of his dog.

¶7     On August 14, 2010, Beth and Ian had dinner again in Beth's cabin and Ian returned to his cabin for the night.  At about 10:00 p.m., Beth was in her pajamas, sitting and watching television.  Her door was not locked.  She had not seen anyone drive up her driveway.  She felt a hand on her shoulder.  Startled, she stood up and saw Caswell.  She asked him what he was doing there.  He sat down on the loveseat and told Beth to do the

same. She moved toward the dining area and asked him to leave. Caswell ignored Beth, threatened to kill himself, and said that he wanted to make love to her. Beth told Caswell "no" and again told him to leave. Caswell became belligerent, told Beth he was going to have sex with her, and grabbed Beth. Beth resisted, but Caswell used his size advantage to force Beth toward the bedroom. Beth wedged herself in the bathroom doorway and bit Caswell in the shoulder. She pleaded with Caswell "not to do this." Caswell pushed Beth onto the bed and pulled off her pajama bottoms over Beth's resistant kicking. Caswell ordered her to take off her top and she complied, believing further resistance futile. When Caswell left the room briefly, Beth attempted to call Ian on her cell phone, and grabbed a flashlight to hit Caswell. Caswell took the phone and flashlight away from Beth and subjected her to oral, vaginal, and anal sex. When finished, Caswell asked Beth if she wanted to call the sheriff, and she said no, believing Caswell was testing her. He then asked if he could come back later. Attempting to convince Caswell to leave, Beth said he could.

¶8 When Caswell left, Beth immediately locked the door and called 911 to report Caswell's assault. Ian came to the cabin to wait with Beth for an officer. Captain Pitman arrived at Beth's cabin in the early morning hours of August 15, 2010, and transported Beth to another son's house in Eureka. Detective Rhoades, assigned to investigate sex crimes, was contacted and took over the investigation. Ian stayed at Beth's cabin in case Caswell returned, which he did. Captain Pitman returned to Beth's cabin and arrested Caswell without incident. Caswell was charged with one count of felony burglary, in

4

violation of § 45-6-204, MCA, one count of felony sexual intercourse without consent, in violation of § 45-5-503, MCA, and one count of misdemeanor partner/family member assault, in violation of § 45-5-206, MCA.

¶9 Caswell filed a pre-trial motion in limine requesting the court, among other things, to exclude all evidence relating to the prior assault on March 26, 2009. The State resisted, arguing that this evidence "goes directly to the critical question as to whether or not there was consent to the sexual intercourse, and whether or not the victim was compelled to submit by force." After conducting a hearing on the motion, the court orally ruled:

> I am going to permit . . . Ms. Caswell's testimony about the 2009 assault on her and her treatment. I will permit the 9-1-1 call. I will not permit, without other foundation, the officers' interviews, or her handwritten statement, her recorded statement, unless there is a foundation shown for them, that is her cross-examination, or if they are used in cross-examination to impeach her or something of that sort.
> I'll permit the photographs that were taken immediately, well, that were taken in 2009 and taken in 2010, assuming there is a foundation for them, that is that they are accurate, etcetera.

The District Court further clarified: "I think a fair reading of [*State v. Eighteenth Jud. Dist. Ct.*, 2010 MT 263, 358 Mont. 325, 246 P.3d 415] is that so long as it goes to the issue of whether there was consent, and not simply to show — I mean, the Rule 404B restrictions are still in place because it is clear the State isn't offering it as to show that he was acting in conformity with that character."

¶10 Trial was held March 1-3, 2011. Caswell defended against the charges by asserting that he and Beth were on good terms, maintained frequent contact, and engaged

5

in consensual sex on the night in question. Beth testified about the 2009 incident, describing the argument she and Caswell had at that time and the injuries she sustained during the assault. The District Court issued limiting instructions under M. R. Evid. 105, instructing the jury:

> The State has offered evidence that the Defendant at another time engaged in another act against Beth Caswell. That evidence was not admitted to prove the character of the Defendant or to show he acted in conformity therewith. The only purpose of admitting that evidence was to show the basis of the complaining witness's state of mind at the time of the alleged offense. You may not use that evidence for any other purpose.
> The Defendant is not being tried for that other act. He may not be convicted for any other offense than that charged in this case. For the jury to convict the Defendant of any other offense than that charged in this case may result in unjust double punishment of the Defendant.

When the State referenced the 2009 incident during closing argument, the court interrupted to add: "[t]he instruction I gave you was that the earlier act by the Defendant was to be used only to show the basis of the complaining witness's acts, or state of mind at the time of this offense, not against the Defendant."

¶11 The jury found Caswell guilty of sexual intercourse without consent and partner/family member assault, and not guilty of burglary. After sentencing,[1] Caswell filed a notice of appeal on September 9, 2011. While preparing the transcript for appeal, the court reporter discovered that approximately 15 to 20 minutes of Captain Pitman's direct and cross-examination was not recorded by the substitute court reporter who had worked the trial. The District Court, sua sponte, ordered that the procedure under M. R.

---

[1] Caswell was sentenced to 60 years in the Montana State Prison, without parole, for the sexual intercourse without consent conviction, and one year in the Lincoln County Detention Center for the partner/family member assault conviction, to run consecutively.

App. P. 8(7) (2011) be implemented, which provides for supplementation of the record "[i]f a trial or other proceeding was not reported in whole or in part, or if a transcript is otherwise unavailable." The State filed a statement of recollection, citing the prosecutor's handwritten trial notes, the recording log, exhibit logs, the partial transcript, and a consultation with Captain Pitman, to summarize the portion of his testimony that was not recorded. The State identified 30 photographs taken by Pitman that were admitted as exhibits during his direct examination. The State also summarized Caswell's cross-examination of Pitman, including Pitman's recollection of arresting Caswell after the 2009 incident, and the court's admission of the arrest report from the 2009 incident. Caswell's response, filed December 13, 2011, stated, "[a]fter an approximate nine month lapse in time, counsel for the defendant does not have any independent recollection of the specifics of the missing testimony. Defense counsel believes objections were made during the course of the arresting officer's testimony but has no recollection of the district court's rulings on any objections." Caswell submitted a list of topics he believed were covered during the missing portion of Pitman's cross-examination, including proof that Caswell was not drinking, was cooperative, was forthcoming, and that Ian and Beth had lied in their testimony and in their statements to law enforcement.

¶12 On January 9, 2012, the District Court issued its Order Adopting Statement of Unavailable Evidence under M. R. App. P. 8(7)(d), in which the court stated it had "examined the State's Statement of Unavailable Evidence, the Defendant's Response, the partial transcript of the available recorded testimony of Captain Bo Pitman, the recording

7

log, and the exhibits introduced into evidence at the trial." Caswell filed an objection to the order, which was denied by the District Court. Caswell appeals.

## STANDARD OF REVIEW

¶13 "Whether a reconstructed record is of sufficient completeness to accord effective appellate review is a question which may be determined by this Court." *State v. Deschon*, 2004 MT 32, ¶ 16, 320 Mont. 1, 85 P.3d 756 (*Deschon II*).[2] Failure to record a proceeding will "mandate a reversal only if the absence of [the] proceeding is a substantial and significant omission from the record which cannot be adequately reconstructed." *Deschon II*, ¶ 14 (quoting *U.S. v. Cashwell*, 950 F.2d 699, 704 (11th Cir. 1992)). Thus, we review this issue de novo as a matter of law.

¶14 A district court has broad discretion in determining whether evidence is relevant and admissible. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. We review a district court's determination on the admissibility of evidence for an abuse of discretion. *Derbyshire*, ¶ 19; *State v. Guill*, 2010 MT 69, ¶ 21, 355 Mont. 490, 228 P.3d 1152. "A court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Derbyshire*, ¶ 19 (citation omitted). When the court's ruling is based on an interpretation of an evidentiary rule or statute, our review is de novo and we will review the district court's conclusions to determine whether the court correctly interpreted the

---

[2] *Deschon II* cites to former M. R. App. P. 9(f). The District Court followed M. R. App. P. 8(6) in this case, which superseded M. R. App. P. 9(f). *See* Or., *In Re: Rules of Appellate Procedure*, (Mont. July 3, 2007) (No. AF 07-0016).

law. *State v. Sage*, 2010 MT 156, ¶ 21, 357 Mont. 99, 235 P.3d 1284 (citing *Derbyshire*, ¶ 19).

## DISCUSSION

¶15 *1. Was the defendant's right to due process violated by the failure to record a portion of the State's case in chief?*

¶16 Caswell argues that crucial portions of Pitman's testimony were not recorded, that "all that remains is, at best, a summary based on recollections cobbled together nine months after the testimony occurred," and that "[w]ithout a complete record of this testimony – both direct and cross-examinations, effective appellate review is unavailable for know[n] errors and objections during trial." Caswell argues that Pitman's role in the present case as well as his testimony regarding the 2009 incident establishes prejudice because the current state of the record diminishes his ability to pursue his appeal.

¶17 The State argues that Caswell has not identified a tenable theory on appeal and Pitman did not provide any testimony that the State did not also present through other means. The State maintains that the testimony was adequately reconstructed and, based upon the entirety of the record, Caswell's due process has not been violated.

¶18 Due process of law is guaranteed by the Fifth Amendment to the United States Constitution and Article II, Section 17 of the Constitution of the State of Montana. To determine when a court's failure to record a portion of a criminal trial violates a defendant's right to due process, we review two criteria: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript."

*State v. Deschon*, 2002 MT 16, ¶ 26, 308 Mont. 175, 40 P.3d 391 (*Deschon I*) (quoting *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 434 (1971); *Madera v. Risley*, 885 F.2d 646, 648 (9th Cir. 1989)).

¶19 Under the first prong of the *Britt* test, the "value of the transcript to the defendant," the defendant must identify a "tenable theory as to what the [recording] error might have involved." *Deschon I*, ¶ 28; *Madera*, 885 F.2d at 648. In *Deschon I*, the defendant argued he needed a record of voir dire "to determine whether any of the jurors were prejudiced by pre-trial publicity," which we determined was a "tenable theory" that satisfied the first prong of the *Britt* test. *Deschon I*, ¶ 28. In *Madera*, the Montana state district court "did not record the voir dire, opening statements, closing arguments, bench conferences, jury charge, or the jury poll." *Madera*, 885 F.2d at 647. The Ninth Circuit Court of Appeals concluded that the defendant satisfied the first prong of the *Britt* test by his claim that he needed a complete record to determine whether his codefendant's alibi defense provided him an appealable issue. *Madera*, 885 F.2d at 648.[3]

¶20 Here, we likewise conclude that Caswell presents a "tenable theory" that he was prejudiced by lack of a record in light of Pitman's testimony about the events at issue on the night in question, and about the 2009 incident between Caswell and Beth. This theory is directly related to Caswell's second issue on appeal, in which Caswell argues that the District Court erred by permitting Pitman to testify regarding the 2009 incident.

---

[3] The U.S. Magistrate conducted an evidentiary hearing to reconstruct the unrecorded portions of the transcript, which the Ninth Circuit Court of Appeals concluded was adequate and not a violation of due process. *Madera*, 885 F.2d at 648-49.

Caswell thus satisfies the first prong of the *Britt* test, "the value of the transcript to the defendant."

¶21 The United States Supreme Court has identified several alternative devices that may be employed to fulfill the transcript function. These have been applied in conjunction with the second prong of the *Britt* test:

> Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript.

*Draper v. Washington*, 372 U.S. 487, 495, 83 S. Ct. 774, 779 (1963); *Madera*, 885 F.2d at 649. As we have likewise explained, "[a] reconstructed record, as opposed to a verbatim transcript, can afford effective appellate review, particularly where appellate rules have established a procedure for reconstruction of the trial record." *Deschon II*, ¶ 13; *Cashwell*, 950 F.2d at 703.

¶22 M. R. App. P. 8 provides a method for reconstruction of the trial record in the event the transcript is unavailable.

> Correction or modification of the record. If any difference arises as to whether the record accurately discloses what occurred in the district court, the difference shall be submitted to and settled by the district court within the time provided for transmission of the record or within such time as the district court may for good cause permit, and the record made to conform to the truth. *If anything material to either party is omitted from the record by error or accident* or is misstated therein, the parties by stipulation, or the district court, on motion of a party or upon its own motion, either before or after transmission of the record to the supreme court, may order that the omission or misstatement be corrected and, if

11

> necessary, that a supplemental record be certified and transmitted. All other questions as to form and content of the record shall be presented to the supreme court.

M. R. App. P. 8(6) (emphasis added). Supplementing this procedure, M. R. App. P. 8(7) provides that "a statement of the evidence of the trial, proceeding, or unavailable transcript may be prepared" by the parties filing "a statement of the unavailable evidence from the best available means including the party's recollections. . . . This statement must specify the source or sources of the parties' statements of evidence." M. R. App. P. 8(7)(b). After examination of the parties' statements, the district court must enter an order "adopting or rejecting, in whole or in part, the statement of unavailable evidence such that any statement adopted by the district court most accurately reflects the unavailable evidence." M. R. App. P. 8(7)(d). If the unavailable evidence related to the missing portion of the record presents a "fair and accurate picture" when "taken as a whole," the reconstructed transcript creates a record of sufficient completeness to assure that the defendant's right to due process is not violated. *Deschon II*, ¶ 29.

¶23 The District Court invoked the procedure provided by these rules and the parties provided submissions about the missing record. In its order, the District Court cited "the State's Statement of Unavailable Evidence, the Defendant's Response, the partial transcript of the available recorded testimony of Captain Bo Pitman, the recording log, and the exhibits introduced into evidence at the trial" in determining that the portion of the trial omitted from the transcript had been adequately reconstructed. After review, we likewise conclude that the reconstructed record, when "taken as a whole," presents a "fair

12

and accurate picture" of what occurred during the portion of Pitman's testimony omitted from the trial transcript. The record is of sufficient completeness to afford effective appellate review, particularly of the admission of evidence regarding the 2009 incident. We thus conclude that Caswell's right to due process was not compromised. *Deschon II*, ¶¶ 16, 29.

¶24 *2. Did the District Court abuse its discretion by admitting evidence of the defendant's prior assault of the victim?*

¶25 In the District Court, Caswell argued that the evidence of his previous assault upon Beth should be excluded as irrelevant under M. R. Evid. 402, unfairly prejudicial under M. R. Evid. 403, and as raising an improper propensity inference under M. R. Evid. 404. Caswell echoes these arguments on appeal, and adds that "[r]egardless of its expressed intent in the use of the evidence, the State's use of the prior assault extended far beyond the narrow purposes for which it was supposedly admitted," and even if the evidence was properly admitted under M. R. Evid. 404(b), "its admission was still improper because its probative value into the supposedly limited purpose articulated by the State was substantially outweighed by the prejudice to Caswell."

¶26 The State replies that the District Court did not err in admitting the evidence, citing *Guill*, ¶ 34, for the position that a defendant's prior acts against a victim are relevant for the issue of consent where lack of consent is a necessary element of sexual intercourse without consent. The State also argues that evidence of the 2009 incident was relevant to show that Beth had a reasonable apprehension of bodily injury for purposes of the partner/family member assault charge.

13

¶27 Generally, evidence of a defendant's prior acts or crimes "is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b). Even if admissible for such purposes, such evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." M. R. Evid. 403 (*see i.e. State v. Skinner*, 163 Mont. 58, 64, 515 P.2d 81, 84 (1973)). Clarifying the procedure to be followed when admission of such evidence is an issue, we have instructed:

> [I]t is up to the defendant to identify any of the State's evidence that she believes should be excluded as irrelevant (Rule 402), unfairly prejudicial (Rule 403), relevant only for an improper propensity inference (Rule 404), or inadmissible under some other rule, and to explain with argument and authority why the evidence should be excluded. This may be accomplished by means of a motion in limine. . . . The prosecutor will then be required to respond to the defendant's objections and to demonstrate the evidence's admissibility. The court should conduct a hearing and issue a written decision with appropriate findings of fact and conclusions of law. If the court determines that the evidence is admissible, the defendant may request an instruction under Rule 105.

*Eighteenth Jud. Dist. Ct.*, ¶ 49.

¶28 Caswell admitted to having sexual relations with Beth but claimed the relations were consensual, making Beth's consent the central issue of the trial. The parties were married at the time and Caswell claimed they were getting along well and seeing each other often. Then, during the incident itself, Beth complied with Caswell's demands to a limited degree because of her apprehension about what Caswell might do. The District

14

Court did not abuse its discretion in determining that this was an appropriate case for introduction of evidence of a previous assault on the issue of consent, and that the relevance of the evidence was not outweighed by unfair prejudice. Although Caswell argues the evidence was used beyond its stated purpose, the District Court limited the scope of the evidence about the 2009 incident, gave a limiting instruction to the jury under M. R. Evid. 105, and even interrupted the prosecutor's closing argument to again advise the jury that the evidence could "be used only to show the basis of the complaining witness's acts, or state of mind at the time of this offense, not against the Defendant." The evidence was carefully limited in this case.

¶29 Procedurally, the District Court held a hearing on this issue but did not enter written findings of fact or conclusions of law. The better policy would be to adhere to the procedure suggested in *Eighteenth Jud. Dist. Ct.* and follow the hearing with "a written decision with appropriate findings of fact and conclusions of law." *Eighteenth Jud. Dist. Ct.*, ¶ 49. However, the District Court here clearly articulated the evidentiary boundaries and the transcript shows that both parties understood the limitations the court had placed on the State's use of the evidence.

¶30 Affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS